# EXHIBIT J

This e-copy is the official court record (GC68150).

FILED
MERCED COUNTY
2019 OCT 15 PM 4:32
CLERK OF THE SUPERIOR COURT
_____ DEPUTY

SUPERIOR COURT OF CALIFORNIA

COUNTY OF MERCED

| | |
|---|---|
| DAN YOON,<br><br>   Plaintiff,<br><br>v.<br><br>K.S. AVIATION, INC.; JOHN YOON; CHEN ZHAO aka ERIC ZHAO; XING KONG AVIATION SERVICE LLC, and DOES 1 to 20,<br><br>   Defendant.<br>_____<br>KS AVIATION, INC.; JOHN YOON,<br><br>   Cross-Complainants,<br><br>v.<br><br>DAN YOON; and ROES 1 through 50, inclusive,<br><br>   Cross-Defendants | Case No. 17CV-00630<br><br>STATEMENT OF DECISION |

## ISSUES

The enforceability of the September 2, 2016 Settlement Agreement between John Yoon (John) and Dan Yoon (Dan) requires adjudication of the following issues:

1. Was Dan's consent to the Settlement Agreement procured by fraud, duress, menace or undue influence?
2. Does the Agreement lack mutuality of obligations?
3. What are John and Dan's respective obligations under the Agreement?

- 1 -

STATEMENT OF DECISION
DAN YOON v. K.S. AVIATION, INC., et al. CASE #17CV-00630

Case: 20-04021    Doc#: 13    Filed: 03/04/20    Entered: 05/01/20 16:29:24    Page 2 of 14

This e-copy is the official court record (GC68150).

4. Did Dan breach the Agreement?

5. Is John entitled to specific performance?

6. Did John and KS Aviation Inc. (KS) breach the agreement in a material respect?

7. Is the Agreement unconscionable?

## APPLICABLE LAW

Consent to a contract must be freely given. Cal. Civil Code § 1565. Consent obtained by duress, fraud or undue influence is not freely given Cal. Civil Code § 1568. Duress requires commission of a wrongful act or threat to pressure a party to consent to the contract. The party pressured must be so afraid or intimidated by the wrongful act or wrongful threat that he did not have the free will to refuse to consent to the contract and the consenting party would not have consented to the contract without the wrongful act or threat. Cal. Civil Code § 1567, 1568. An agreement obtained by threat of criminal prosecution constitutes menace and is unenforceable. *Bayscene Resident Negotiators v. Bayscene Mobilehome Park* (1993) 15 Cal App 4th 119,127. However, the other contracting party cannot sustain an action for duress when the voluntary action of the party is induced by his speculation upon or anticipation of a future event suggested to him. *Goldstein v. Ench* (1967) 248 Cal App 2d 891, 894-895. Undue influence consists of a person holding a position of trust or confidence pressuring a party to consent to a contract that the pressured party would not have otherwise consented. Undue influence overcomes freely given consent by grossly oppressive and unfair advantage of another's distress. Cal. Civil Code § 1575. Actual fraud requires suggestion of an untrue fact, known to be untrue to persuade a party to agree to the contract and the relying party reasonably relied on the false representation and would not have entered into the contract had they known the truth. Cal. Civil Code § 1572.

A contract is subject to specific performance after a breach if the plaintiff establishes each of the following:

1. Inadequacy of the legal remedy;

2. The underlying contract is both reasonable and supported by adequate consideration;

3. The existence of a mutuality of [obligations];

///

- 2 -
STATEMENT OF DECISION

4. The contract terms are sufficiently definite to enable the Court to know what it is to enforce; and

5. A substantial similarity of the requested performance to that promised in the contract.

*Tamarind Lithography Workshop Inc. v. Sanders* (1983) 143 Cal.App. 3d 571, 575; *Henderson v. Fisher* (1965) 236 Cal.App. 2d 468, 473; *Real Estate Analytics, LLC v. Vallas* (2008) 160 Cal.App. 4th 463, 472.

Contracts for the transfer of stock in a closed corporation have long been held to be subject to specific performance. *Senter v. Davis* (1869) 38 Cal. 450; *Treasurer v. Commercial Coal Mining Co.* (1863) 23 Cal. 390. Specific performance to transfer corporate stock in a closed corporation will be ordered if the stock has no market or ascertainable value. *Krouse v. Woodwork* (1895) 110 Cal. 638.

*California Civil Code section 3386* provides:

> "Notwithstanding that the agreed counter-performance is not or would not have been specifically enforceable, specific performance may be compelled if:
>
> (a) Specific performance would otherwise be an appropriate remedy; and
> (b) The agreed counter performance has been substantially performed or its concurrent or future performance is assured or, if the court deems necessary, can be secured to the satisfaction of the court."

### DAN'S CONSENT TO ENTERING INTO THE SETTLEMENT AGREEMENT WAS NOT PROCURED BY FRAUD, DURESS, OR UNDUE INFLUENCE. DAN'S CONSENT TO THE AGREEMENT WAS FREELY AND KNOWINGLY GIVEN.

Dan contends the following facts negate his consent to the contract: Attorney Kim's violation of the Canons of Ethics in communicating directly with Dan to settle the disputes between Dan and John without Dan's attorney's present. John's representations that if he and Dan settled their respective claims against each other, that he would report the changes to the District Attorney to get the DA to cooperate. John would try to get the KS employees to drop their legal claims against Dan. Attorney Kim allegedly threatened that without their help Dan was going to jail.

/ / /

/ / /

- 3 -
STATEMENT OF DECISION
DAN YOON v. K.S. AVIATION, INC., et al. CASE #17CV00630

At the time of the settlement agreement, Dan was facing four felony counts of forgery and falsification of corporate documents. Trial was set to commence on September 13, 2016. In addition, KS Aviation did not have sufficient funds to meet payroll. KS Aviation was delinquent in its rent, and accounts payable. Sierra Development Company had defaulted on the simulator loans. Under these circumstances, Dan wanted the criminal case resolved without a felony conviction and/or the risk of substantial jail time. Dan had personal and financial incentives to enter into the settlement agreement.

Dan was not a credible witness. With respect to the criminal charges, Dan testified he did not forge or falsify any documents. The facts belie his testimony. The forged documents benefited Dan and no one else. One of the documents allocated ownership in Sierra Development Company 65% to Dan, thereby giving him control of the business. A KS Board of Directors Meeting Minutes authorized a million-dollar bonus to Dan. One of the documents contained John's the personal history, which was necessary to obtain the SBA simulator loan. Dan was negotiating and submitting all the paper work for the loan. Another document was a Secretary of State Statement of Information listing the corporate officers. The evidence presented at the preliminary hearing in the criminal case was that all of the signatures on the documents in question were forged. John's signature was not the only forgery. Two other individuals told the DA investigator that their signatures on the Corporate Minutes were not theirs and that they never attended the alleged Board of Directors meeting. The only one to benefit from these documents was Dan, both financially and to establish management and control of the business. Whether he personally forged the signatures, conspired to, or aided and abetted the creation and forged documents is immaterial. Cal. Civil Code § 1565

Dan testified that attorney Kim approached him at a funeral to negotiate a settlement. Dan testified that attorney Kim instructed him not to discuss the proposed settlement with his lawyer. In contrast, attorney Kim testified that Dan came to his office without an appointment to discuss the case. Kim told him he could not talk to him without his attorney present. Dan told Kim he had already discussed it with his attorney and had agreed that Dan could talk directly with Kim. Kim testified that Dan seemed desperate to settle the matter. At the time, Dan was primarily

- 4 -

STATEMENT OF DECISION
DAN YOON v. K.S. AVIATION, INC., et al. CASE #17CV00630

concerned about the forthcoming criminal trial. In addition, Dan did not want to contribute any additional funds to KS. KS lacked sufficient funds to meet payroll. His wife was ill due to the stress. Dan was facing or threatened with at least four lawsuits by KS employees for sexual harassment, hostile workplace, and/or battery.

Dan testified that he believed that the Settlement Agreement only required that he do whatever was necessary to withdraw from all management and control of KS but that he was not required to transfer his KS stock. The agreement is clear that Dan was to relinquish and transfer all of his shares to KS.

On September 20, 2016, Dan swore under penalty of perjury that he was not a KS shareholder. Yet, to date asserts he is a shareholder and has tried to force the calling of a shareholder meeting.

Although Dan is Korean and speaks with an accent, he has years of experience with complicated business matters. He has operated a restaurant with numerous employees for many years. He negotiated leases, real estate purchases, multi-million dollar loans and a contract for a five million dollar simulator. He has hired and used attorneys and CPA's for numerous business entities including corporations and limited liability companies. He owned and managed companies with 30 or more employees. He reads and understands English.

Dan's management of KS Aviation evidenced a "controlling" personality. He was frustrated with the fact that a settlement with John had not been reached. Settlement negotiations began in April, 2016. And by the end of August, 2016 no settlement was apparent. Dan initiated the contact with attorney Kim. Dan chose not to involve his attorney. In fact, on September 6, Dan told his attorney that he had settled with John and instructed attorney Lawrence to dismiss his lawsuit against John. Attorney Lawrence asked to see the settlement agreement, however, Dan decided not to give him a copy until days or two weeks later. Nothing prevented Dan from properly forwarding a copy of the agreement to attorney Lawrence. It was Dan's decision to delay informing Lawrence of the settlement agreement. Dan wanted the terms of the settlement agreement executed properly because of the pending criminal trial. Even though attorney Kim
///

- 5 -
STATEMENT OF DECISION
DAN YOON v. K.S. AVIATION, INC., et al. CASE #17CV-00630

violated the Canons of Ethics by having contact with Dan, it was Dan's decision not to involve his attorney. Dan acted freely and voluntarily.

The evidence does not support duress based upon alleged threats of criminal process. The felony charges pending against Dan had substantial merit. Dan's denial of criminal culpability lacks credibility. Dan, in fact, received the benefit of John's cooperation in connection with the criminal case. The fact that Dan had a written settlement agreement with John settling all of their disputes provided Dan with necessary information to induce the DA to reduce and settle the criminal charges. John was the party aggrieved by Dan's alleged criminal conduct. The aggrieved party was satisfied with the settlement. The criminal trial was continued and the case settled in April, 2017 with the four felony charges reduced to misdemeanors. Dan was sentenced to probation with no jail time. In addition, he was allowed to enter a plea of "No Contest in Abstentia."

Dan argued that his attorney had no input into the settlement agreement. The testimony of Lance Lippincott and the e-mail exchange does not support this position. On the Friday before the settlement agreement was signed, Lippincott had forwarded an e-mail with proposed revisions to the settlement agreement. Attorney Kim incorporated Lippincott's revisions into the final settlement agreement. The evidence supports findings that attorney Lawrence's office did have input into the final settlement agreement.

In addition, Dan testified that over the years he contributed millions of dollars to KS and made no withdrawals until 2013-2014 when KS Aviation turned profitable. Dan testified he only received 10 months of $25,000.00 per month salary. He denied receiving any payments on the loans he made to the corporation. In contrast, Josh McDaniel testified that KS had a CPA do a forensic accounting, which showed that Dan had used over $4 million of KS funds for personal use. The corporate minutes containing the forged signatures authorized a $1 million payment to Dan.

Based on all the above, the evidence does not support Dan's contention that he was fraudulently induced to enter into the settlement agreement. Attorney Kim's misconduct did not nullify Dan's free will to enter into the settlement agreement. The fact that Dan was feeling

- 6 -
STATEMENT OF DECISION
DAN YOON v. K.S. AVIATION, INC., et al. CASE #17CV-00630

Case: 20-04021    Doc# 13    Filed: 03/04/20    Entered: 05/04/20 16:29:24    Page 7 of 14

economic duress and personal family stresses were legitimate reasons for him to agree to the settlement. Dan acted on his own to get an expeditious settlement of the disputes with John and have a written agreement documenting the settlement. Having the executed agreement provided negotiating leverage with the DA in the criminal case. Nor does the evidence support a finding that Dan's free will was overcome by duress or undue influence. The fact that he did not want to have to contribute any more money to KS, that the only chance he had of obtaining any money from KS was if John could find a new investor, that Dan felt stressed because KS employees were filing claims for his alleged mistreatment and that he had concerns for his wife's health were all legitimate reasons to freely enter into the agreement.

## THERE IS MUTUALITY OF OBLIGATION IN THE AGREEMENT

In the instant case, Dan agreed to the following:

> "Dan agrees he shall withdraw from all daily affairs of the KS Aviation, Inc. or executive duties and responsibilities as a senior executive or as a member of the board of directors of KS Aviation Inc. including Sierra Academy of Aeronautics. Therefore, effective on the date indicated above, Dan shall submit his resignation as CFO of KS Aviation Inc. and any and all other positions, as well as his membership on the board of directors."

> "Dan agrees to relinquish all his shares of stock in KS Aviation Inc., return all his shares to the corporation, and agrees to return any and all company property, including vehicles, computers, telephones, software, keys, company credit cards, and any and all airport security passes."

Dan agreed to give up his ownership and management in KS. John would be the majority shareholder and have full management and control of the business. Dan further agreed that the simulator belonged to KS.

Dan agreed to dismiss his pending lawsuits against John and KS within 5 days.

Dan agreed to have no further contact with John, his family, or any KS employees, contractors, consultants, or other individuals doing business with KS.

Dan agreed not to enter into any business related to training of pilots for four years.

John and KS agreed to do the following:

1. Relinquish all interest in Sierra Air Center Development, LLC and EB5 programs to Dan.

2. Repay all legally documented KS loans made by Dan as determined by a neutral CPA when:
    a. KS has paid all past due debts as of 9/2/16;
    b. KS has resolved all judgments against it as of 9/2/16;
    c. KS has sufficient operating capital to meet operating requirements including updating the aircraft fleet and maintenance operations.
3. In addition to the loan payments, KS would pay to Dan's family in 12-18 months a sum to be determined and contingent upon the following:
    a. The company showing a continuing trend toward growth and profitability;
    b. The Board of Directors determining the amount or
    c. if a new investor purchased equity in KS, the investor would determine the amount to be paid;
    d. Payments would be made annually and based on company profitability to be determined by an outside neutral certified public accountant;
4. KS assumed liability for the simulator loans and agreed to make the loan payments. If the loans became delinquent and the creditors sought enforcement against Dan, John and KS agreed to indemnify Dan for any liability he may face on those loans.
5. John and KS agreed to dismiss all lawsuits against Dan within 7 days.

John and Dan agreed to a comprehensive mutual release of all claims of any kind or nature, known or unknown, actual or potential they may have against each other. The release was so broad that it would bind KS as well since John was the controlling shareholder and officer. Each party agreed to a California Civil Code 1542 waiver.

Dan argues that the promise to repay his corporate loans and future payments from profits are illusory because they were conditioned upon events the parties knew would never occur, the provisions are too vague for a court to enforce and the promise of future payments from profits was entirely discretionary. The promise to repay Dan's corporate loans was conditioned upon establishing the validity of the loans by a neutral CPA. This condition is enforceable should Dan contend that some of his loans were wrongfully denied by the CPA. Whether the financial records

- 8 -

STATEMENT OF DECISION

Case: 20-04021    Doc#13    Filed: 03/04/20    Entered: 05/04/20 16:23:24    Page 9 of 14

documented the loans in accordance with acceptable accounting practices is something a Court could resolve, if needed. Payment of all KS's "past due" debts and judgments as of 9/2/16 is also an issue that could be adjudicated by the court should Dan believe John and KS were not acting reasonably or in good faith. Dan testified that KS had $3 million in receivables and $2 million in debts as of 9/2/16. KS disputed Dan's testimony. In addition, the settlement envisioned John locating a new investor.

The Agreement does not contain a true "integration" clause. Extraneous evidence is considered to determine the intent of the parties. The intent of the parties was primarily as follows:

John wanted Dan to terminate his management, control, and ownership in KS and agree that KS owned the simulator.

Dan wanted a written agreement providing for the settlement of all of John's and KS's claims of Dan's alleged wrongful acts to be used to help Dan in the pending criminal case. Any prior suggestions for help were problematic as they either could be used to show encouragement of subordination of perjury or obstruction of justice. Dan wanted a means to collect the loan notes he contended KS owed. Dan wanted Sierra Air Center Development and the EB5 program entities. Dan did not want to have to contribute any more moneys to pay KS's obligations. Dan wanted to be indemnified for any liability on the simulator loan and resultant judgments.

Both Dan and John wanted to resolve all claims, known and unknown they had against each other except for the above matters.

Dan did not have a reasonable expectation that he would receive future KS payments in approximately 18 months should KS become past debt fee, profitable and growing. In September, 2016, KS was insolvent, or close to it. The company's future was dependent upon locating a new investor. No prospects were apparent on 9/2/16. Financial survival was questionable. John was able to convince Chen Xhao, CEO of Xing Kong to purchase KS in May, 2017. Xing Kong advanced millions to continue the business operations. The low expectation that John or his family would receive any future payments is further evidenced by the fact both John and Dan agreed that making any future payments was within the discretion of the KS Board of Directors and/or the

- 9 -
STATEMENT OF DECISION
Case: 20-04021    Doc# 13    Filed: 08/04/20    Entered: 08/17/20 06:39:24    Page 10 of 14

new investor. Dan could challenge the denial of any payments only if he could prove that all KS debts and judgments had been paid, the company was profitable and growing and that the board and/or the investor acted in bad faith.

Dan argues that Sierra Air Development and the EB5 program were valueless because Sierra had no assets and there is nothing to transfer under the EB5 program. Dan had managed Sierra Air Development and the EB5 program for years. If he thought he could use this entity and program to his benefit, he bore the risk. The agreement specifically provided that the simulator would belong to KS, not Sierra Air Development.

Dan got the benefit of dismissal of the lawsuits against him. KS settled the employee claims. The claims all arose out of alleged Dan's alleged misconduct.

John and KS are liable to indemnify Dan against any sums he is forced to pay on the simulator loans and resulting judgments. This remains to be resolved. This is a matter of money damages. The issues of performance and/or excused performance due to Dan's breach in falling to transfer his KS stock, alleged failure to cooperate with completing Bank of the West documents, etc. are all issues yet to be tried.

One of the most valuable considerations Dan received was the general release of all known and unknown claims that John and KS had against Dan as of 9/2/16. The release bars any claims for alleged misappropriation of KS funds for personal use. It bars any offset claims KS may have against KS's and John's obligation to indemnify Dan for any moneys he ends up paying to Bank of the West on the simulator loan judgment. It bars any offset claims KS may have against valid unpaid loans Dan made to KS. KS is still entitled to credits for payments it made on the loans, but not for non-loan payments amounting to misappropriation of corporate funds for personal use. KS and John may have other defenses to the indemnity action and/or loan collection complaint based on facts occurring after the 9/2/16 agreement. Those issues remain to be adjudicated under Dan's complaint in the current action.

Based on all the above, there was mutuality of obligations set forth in the agreement.

///

///

- 10 -

STATEMENT OF DECISION
DAN YOON v. K.S. AVIATION, INC., et al. CASE #17CV-00630

# THE SETTLEMENT AGREEMENT IS NOT UNCONSCIONABLE

Dan is an experienced and sophisticated businessman. He and John were equals as far as bargaining positions. Both were experienced in hiring and using attorneys and CPAs. The fact that Dan chose to represent himself in finalizing the settlement agreement and that John was represented by attorney Kim did not shift the balance of bargaining positions to the point that that Dan had no bargaining power. He could have followed his son's advice and not signed the agreement. He chose to enter into the agreement. The terms of the agreement are not unconscionable. Dan received most of the consideration he sought through and under the agreement.

# AN UNJUST RESULT WOULD OCCUR IF DAN IS NOT REQUIRED TO TRANSFER HIS KS STOCK AS HE HAS RECEIVED SUBSTANTIAL BENEFIT UNDER THE AGREEMENT

The agreement clearly helped to settle the criminal charges. Dan did not have to contribute more operating capital to KS to cover payroll, unpaid taxes, employee's claims, operating expenses etc. KS settled the employee claims. Dan is seeking rescission relief without complying with Cal. Civil Code § 1691 which requires each party to the contract to restore to the other everything of value received under the contract. He has not and cannot restore the benefits he received with and under the contract.

# KS AND JOHN ARE ENTITLED TO SPECIFIC PERFORMANCE OF THE CONTRACT

The value of the KS stock at the time of the breach cannot be determined. Any value was contingent upon Xing Kong willing to purchase KS. Xing Kong agreed to purchase KS on condition that John transfer 100% of KS. John and Dan are the controlling shareholders. Although there are a few minority shareholders, Chen Xhao, (Xing Kong's owner) made it clear he would not purchase KS if Dan was a shareholder or in any way involved with the business. John needs Dan's stock or KS will lose its investor. Determination of money damages due to Dan's breach is difficult if not impossible to determine.

///

///

- 11 -

STATEMENT OF DECISION
DAN YOON v. K.S. AVIATION, INC., et al. CASE #17CV-00620

Case: 20-04021    Doc#: 13    Filed: 03/04/20    Entered: 05/01/20 16:29:24    Page 12 of 14

## ALTHOUGH KS AND JOHN HAVE NOT FULLY PERFORMED ALL THEIR OBLIGATIONS UNDER THE CONTRACT, THESE UNFULLFILLED OBLIGATIONS ARE CAPABLE OF BEING SATISFIED BY MONEY DAMAGES.

Dan argues that John and KS have not paid his loans nor have they indemnified him for the Bank of the West judgment. The loans are in dispute and need to be adjudicated in accordance with the terms of the agreement. It is unclear under the law of indemnity, whether Dan is entitled to some form of compensation with respect to the Bank of the West judgment. In addition, KS did take some action towards the loan assumption but Dan did not complete any of the paper work. Realistically, Bank of the West was unlikely to release any guarantor from liability on the simulator loan. The law is capable of fully compensating Dan for both of these alleged breaches, if in fact, John and/or KS breached the contract. Therefore, these issues do not bar John and KS from specifically enforcing the contract requiring Dan to transfer his KS stock. Cal. Civil Code § 3392.

## DECISION

The Settlement Agreement dated September 2, 2016 is enforceable. Dan's motion to compel a KS shareholder meeting is denied. Dan breached the agreement by failing to transfer his stock to KS. John and KS are entitled to specific performance of the agreement under their cross-complaint. Dan is ordered to transfer all of his KS stock to KS forthwith. The court retains jurisdiction under CCP section 664.6 to enforce this portion of the judgment to be entered herein.

The issues of costs and attorneys fees are deferred until after adjudication of the complaint.

DATED: October 15, 2019

RONALD W. HANSEN
Assigned Judge of the Superior Court

- 12 -

STATEMENT OF DECISION

This e-copy is the official court record (GC68150).

This e-copy is the official court record (GC68150).

# PROOF OF SERVICE BY MAIL
## (1013a, 2015.5 C.C.P)

STATE OF CALIFORNIA )
)
COUNTY OF MERCED ) Case No. **17CV-00630**

    I am a citizen of the United States and a resident of the county aforesaid; I am over the age of eighteen years and not a party to the within entitled action; my business address is Merced County Superior Court, 627 West 21st Street, Merced, California 95340.

    On **October 15, 2019**, I served the within **STATEMENT OF DECISION** on the person(s) named below by placing a true copy thereof in an envelope and then placing in the Merced County Superior Court/Clerk's outgoing mail addressed as follows:

| | |
|---|---|
| **Cyril Lawrence, Esq.**<br>2111 "K" Street<br>Merced, CA 95340 | **Michael L. Abbot, Esq.**<br>126 S. Third Avenue<br>Oakdale, CA 95361 |

    I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    Executed on **October 15, 2019**, at Merced, California.

_____
Claudia N. Juárez, Declarant