Michael L. Abbott, Esq. CSB 148917
Law Offices of Michael Abbott
126 South Third Avenue
Oakdale, CA 95361
Telephone: (209) 844.5633
Facsimile: (209) 844.5632
E-MAIL: solvableproblems@gmail.com

Attorney for Creditors and Defendants, K.S. Aviation, Inc., John Yoon, Chen Zhao, aka Eric
Zhao, Xing Kong Aviation Services, LLC

UNITED STATES BANKRUPTCY COURT

IN AND FOR THE NORTHERN DISTRICT OF CALIFORNIA – Oakland Division

| | |
|---|---|
| In Re:<br><br>DANIEL B. YOON,<br><br>      Debtor / Plaintiff<br><br>v.<br><br>K.S. AVIATION, INC., JOHN YOON;<br>CHEN ZHAO, aka ERIC ZHAO; XING<br>KONG AVIATION SERVICE LLC,<br><br>      Creditor / Defendant<br>_____<br>KS AVIATION, INC.; JOHN YK YOON;<br>CHEN ZHAO; aka ERIC ZHAO; XING<br>KONG AVIATION SERVICE, LLC,<br><br>      Counter-Plaintiffs,<br><br>vs.<br><br>DAN YOON, and ROES 1 through 50,<br><br>      Counter-Defendants<br>_____ | CASE NO.  19-42763<br>Chapter 11 Proceedings<br>Adv. Pro. No. 20-04021<br><br>ANSWER, DEFENSES AND<br>COUNTER CLAIM<br><br><br>Judge: Hon. Charles Novack |

Creditors, Defendants  and Counter-Plaintiffs, K.S. Aviation, Inc., John Yoon, Chen

Zhao, aka Eric Zhao, Xing Kong Aviation Services, LLC, defendants in the above-captioned

Chapter 11 Case (collectively referred to herein as "Defendants"), file this Answer, Defenses and Counterclaims ("Response") in response to Plaintiff's Third Amended Complaint ("TAC"). Except as expressly admitted herein, the allegations of Plaintiff's TAC are denied in their entirety. For their Response, Defendants respectfully state as follows:

I.

## JURISDICTION AND VENUE

1.      Paragraph 1 contains Plaintiffs legal conclusions to which no response is required. Admitted to the extent Paragraph 1 requires a response.

2.      Paragraph 2 contains Plaintiffs legal conclusions to which no response is required. Admitted to the extent Paragraph 2 requires a response.

3.      Paragraph 3 contains Plaintiffs legal conclusions to which no response is required. Admitted to the extent Paragraph 3 requires a response.

II.

## PARTIES

4.      Paragraph 4 is not directed toward Defendants and is therefore denied.

5.      Defendants admit the allegations of Paragraph 5.

6.      Defendants admit the allegations of Paragraph 5 except as to the allegation that Xing Kong is a successor entity to KS, which is denied and the subject of the prior decision of the Superior Court in this matter.

7.      Defendants deny the allegations of Paragraph 7.

8.      Defendants deny the allegations of Paragraph 8.

III.

## FACTUAL ALLEGATIONS IN SUPPORT OF COMPLAINT.

9.      Paragraph 9 is not directed toward Defendants and is therefore denied.

10.     Defendants admit the allegations of Paragraph 10.

11.     Defendants deny the allegations of Paragraph 11.  Due to Plaintiffs fraudulent taking of monies from KSA, it is not possible to ascertain what if anything is owed between the parties without an accounting.

12.     Paragraph 12 is not directed toward Defendants and is therefore denied.

13.     Defendants deny the allegations of Paragraph 13.  Due to Plaintiffs fraudulent taking of monies from KSA, it is not possible to ascertain what if anything is owed between the parties without an accounting.

14.     Defendants admit the allegations of Paragraph 14.

15.     Defendants deny the allegations of Paragraph 15.  Due to Plaintiffs fraudulent taking of monies from KSA, it is not possible to ascertain what if anything is owed between the parties without an accounting.

16.     Defendants deny the allegations of Paragraph 16, at Page 4 Line 25 through Page 5 Line 4.  Defendants admit the allegations of Paragraph 16 at Lines 5 through 12, inclusive.

17.     Defendants admit the first sentence of Paragraph 17 and deny the remainder thereof.

18.     Paragraph 18 contains Plaintiffs legal conclusions to which no response is required. Admitted to the extent Paragraph 18 requires a response.

19.     Defendants deny the allegations of Paragraph 19.  The allegations thereof are the subject of the prior decision of the Superior Court in this matter.

20.     Paragraph 20 is not directed toward Defendants and is therefore denied.

21.     Paragraph 21 is not directed toward Defendants and is therefore denied.

22.     Paragraph 22 is not directed toward Defendants and is therefore denied.

23.     Paragraph 23 is not directed toward Defendants and is therefore denied.

24.     Defendants admit that the Plaintiffs filed this bankruptcy petition and deny the remainder of Paragraph 24.

25.     Defendants admit the allegations of Paragraph 25.

26.     Defendants deny the allegations of Paragraph 26.

27.     Defendants deny the allegations of Paragraph 27.

28.     Defendants deny the allegations of Paragraph 28.

29.     Defendants deny the allegations of Paragraph 29.

30.     Defendants deny the allegations of Paragraph 30.

31.     Defendants deny the allegations of Paragraph 31.

32.     Defendants deny the allegations of Paragraph 32 which is the subject of the prior decision of the Superior Court in this matter.

33.     Defendants deny the allegations of Paragraph 33 which is the subject of the prior decision of the Superior Court in this matter.

34. Defendants deny the allegations of Paragraph 34 which is the subject of the prior decision of the Superior Court in this matter.

35. Defendants deny the allegations of Paragraph 35 which is the subject of the prior decision of the Superior Court in this matter.

36. Defendants deny the allegations of Paragraph 36 which is the subject of the prior decision of the Superior Court in this matter.

37. Defendants deny the allegations of Paragraph 37 which is the subject of the prior decision of the Superior Court in this matter.

38. Defendants deny the allegations of Paragraph 38.

39. Defendants deny the allegations of Paragraph 39 which is the subject of the prior decision of the Superior Court in this matter.

40. Defendants deny the allegations of Paragraph 40 which is the subject of the prior decision of the Superior Court in this matter.

41. Defendants deny the allegations of Paragraph 41 which is the subject of the prior decision of the Superior Court in this matter.

42. Defendants deny the allegations of Paragraph 42 which is the subject of the prior decision of the Superior Court in this matter.

43. Defendants deny the allegations of Paragraph 43 which is the subject of the prior decision of the Superior Court in this matter.

44. Defendants deny the allegations of Paragraph 44.

45. Defendants admit the allegations of Paragraph 45.

46. Defendants deny the allegations of Paragraph 46.

47. The allegations of Paragraph 47 are not directed toward Defendants and are therefore denied.

48. Defendants deny the allegations of Paragraph 48.

DEFENDANTS' DEFENSES

Defendants allege the following negative and/or affirmative defenses with respect to the purported claims for relief alleged in the TAC.

FIRST DEFENSE

(Failure to State a Cause of Action)

As a separate and negative defense to the TAC and to each purported cause of action asserted therein, Defendants submit that the TAC and each purported cause of action asserted therein fails to state a claim against either Defendant and fails to state facts sufficient to constitute a cause of action against Defendants pursuant to Federal Rules of Civil Procedure 9 and 12(b)(6) and other applicable law. Accordingly, the TAC and the causes of action purportedly asserted therein should be dismissed.

SECOND DEFENSE

(Statute of Limitations)

As a separate and affirmative defense to the TAC, and to each purported cause of action asserted therein, Defendants, without admitting that the TAC states a claim, submit that the TAC and each purported cause of action asserted therein, is barred by the applicable statute of limitations to the establishment of the underlying alleged debt itself. See Cal. Code Civ. Proc. §§ 337 (written contract), 338 (fraud), 339 (oral contract); see also Banks v. Gill Distribution Centers, Inc., 263 F.3d 862 (9th Cir. 2001) (there are two distinct issues for the court to consider in conducting dischargeability analysis: establishment of debt itself, which is subject to applicable state statute of limitations, and question of debt's dischargeability); Sun 'n Sand, Inc. v. United California Bank, 21 Cal.3d 671, 701 (1978) (a fraud, deceit, or intentional misrepresentation lawsuit is required to be filed within three years before plaintiff either discovered facts constituting the fraud, or with reasonable diligence could have or should have discovered those facts, whichever comes first).

THIRD DEFENSE

(Laches)

As a separate and affirmative defense to the TAC and to each purported cause of action asserted therein, Defendants submit that the TAC and each purported cause of action asserted therein is barred by the equitable doctrine of laches.

FOURTH DEFENSE

(Unclean Hands)

As a separate and affirmative defense to the TAC and to each purported cause of action asserted therein, Defendants submit that the TAC and each purported cause of action asserted therein is barred by the doctrine of unclean hands. Precision Instrument Mfg. Co. v. Automotive Maint. Mach. Co., 324 U.S. 806, 814 (1945) (unclean hands defense is "a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to

the matter in which he seeks relief, however improper, may have been the behavior of the defendant.").

FIFTH DEFENSE

(Setoff/Recoupment)

As a separate and affirmative defense to the TAC and each purported cause of action asserted therein, Defendants submit that the TAC and each purported cause of action asserted therein is barred by the doctrine of setoff and/or recoupment with respect to the fraudulent activities of Daniel Yoon and/or Hana Japan, Inc.

SIXTH DEFENSE

(Conduct Was Justified)

As a separate and affirmative defense to the TAC and each purported cause of action asserted therein, Defendants submit that the conduct of Defendants in regard to the matters alleged in the TAC was justified, and by reason of the foregoing, Plaintiffs is barred from any recovery against Defendants.

SEVENTH DEFENSE

(Statute of Frauds)

As a separate and affirmative defense to the TAC and to each purported cause of action asserted therein, Defendants submit that the TAC and each purported cause of action asserted therein is barred by California's statute of frauds.

EIGHTH DEFENSE

(Fraud)

As a separate and affirmative defense to the TAC and to each purported cause of action asserted therein, Defendants submit that Defendants committed fraud in the forgery of signatures of Defendants and in taking monies from K.S. Aviation to which Plaintiffs had no right and without the approval of Defendants.

…..

## NINTH DEFENSE

### (Plaintiffs Failure to perform)

As a separate and affirmative defense to the TAC and to each purported cause of action asserted therein, Defendants submit that Defendants fully performed any duty to indemnify Plaintiffs but that Plaintiffs failed and refused to cooperate with Defendants in those efforts.

## RESERVATION OF RIGHTS AND NON-WAIVER

Defendants reserve the right to assert additional defenses, including affirmative defenses, based upon further investigation and/or discovery. Defendants also reserve the right to amend or supplement this Answer based on further formal or informal discovery and/or in response to any amendments or supplements to the TAC made by Plaintiff, and for any such amendments or supplements to the Answer to relate back to the filing of the original Answer.

## DEFENDANTS' COUNTERCLAIMS

By way of their counterclaims Counter-Plaintiffs incorporate the allegations made or admitted in their Answer and their Defenses above as though fully set forth in these counterclaims against Defendants, and allege as follows:

## INTRODUCTION

1.      This action arises from Defendant Daniel Bong Yoon's (" Defendant") various unlawful acts committed against Plaintiff KS Aviation, Inc. (''Plaintiff' or "KS Aviation"). Defendant is an individual who worked for Plaintiff as President and Chief Financial Officer ("CFO") from May 25, 2004 to September 2016. Defendant was also a member of the Board of Directors of Plaintiff and held 500,000 shares or 50% of Plaintiffs outstanding common stocks from May 25,2004 to September l, 2016.

2.      Defendant embezzled a large amount of money from Plaintiffs corporate fund throughout his employment with Plaintiff and manipulated accounting records to cover up his illegal conduct. Upon reviewing the available accounting records. Plaintiff discovered that, from 2014 to 2016 alone, Defendant embezzled more than $2 million from Plaintiffs corporate fund by various means. Despite Plaintiffs repeated requests, Defendant refused to return the corporate fund to Plaintiff. Plaintiff requests that Defendant return the illegally obtained corporate fund of $2,120,787 and any corporate documents he removed when he resigned from Plaintiff in September 2016.

. . . . .

## II.
## JURISDICTION AND VENUE

3.      This Court has subject matter and personal jurisdiction over this matter in that Defendant resides in this jurisdiction and that at least some of the misconduct alleged herein occurred in this jurisdiction.

4.      Venue is proper in this Court because Defendant resides in the Court's jurisdiction.

## III.
## THE PARTIES

5.      Plaintiff, KS Aviation, Inc. dba Sierra Academy of Aeronautics ("SAA"), is a corporation registered in the State of California. Its corporate headquarters are located at 2305 Jetlift Drive, Atwater, CA 95301. Plaintiff is an aviation flight school, providing pilot training to foreign air carriers.

6.      Defendant Dan Bong Yoon is an individual residing in Pleasanton, Alameda County, State of California, Defendant was President, CFO, and a member of the Board of Directors of Plaintiff from May 25,2004 to September 2016.

## Ill,
## THE RELATED PARTIES

7.      John Y. K. Yoon ("Yoon") is an individual residing in Merced County, State of California. Yoon is the founder of KS Aviation. From May 25,2014 to September 2016, Yoon was Chief Executive Officer ("CEO"), Secretary, and a member of the Board of Directors of Plaintiff, He also owned 500,000 shares or 50% of Plaintiffs common stocks from May 25,

2014    to September 1, 2016. Yoon owned 1,000,000 shares or 100% of Plaintiffs common stocks from September 2,2016 to August 16,2017.1 lie is CEO of KS Aviation.

8.      Sierra Air Center, Inc. ("SACI") was registered in the state of California on November 30, 2004 by Defendant. Defendant signed and filed the Article of Incorporation on the same date. In the Article of Incorporation, Defendant designated himself as SACI's initial agent for service of process. Defendant filed the Statement of Information for SACI on February 26, 2014, in which he named himself as CEO and Secretary of SACI and listed the business address as 2305 Jetlift Drive. Atwater, CA 95301. Defendant controls SACI and uses it as one of the entities to carry out his EB-5 regional investment program.

9.     Sierra Air Center Development, LLC ("SACD") was registered in the state of California on September 9, 2011 by Jennee Yoon. In the Statement of Information filed for SACD on September 19, 2016, Defendant's son, Jong Ki Yoon, was listed as CEO of SACD. Defendant controls SACD and uses it as one of the entities to carry out his EB-5 program.

10.     Sierra Air Center Capital, LLC ("SACC") was registered in the state of Delaware on January 26, 2015 and registered in the state of California as a foreign company on April 22, 2015 by Cyril Lawrence, attorney for Defendant and SACC. In the Statement of Information filed for SACC on September 19, 2016, Defendant's son, Jong Ki Yoon, was listed as the sole member of SACC. Defendant controls SACC and uses it as one of the entities to carry out his EB-5 program.

11.     Sierra Air Center Management Group, LLC ("SACMG") was registered in the state of California on September 15, 2011 by Jennee Yoon. In the Statement of Information filed for SACMG on September 19,2016, Defendant's son, Jong Ki Yoon, was listed as CEO of SACMG. Defendant controls SACMG and uses it as one of the entities to carry out his EB-5 program.

12.     Sierra Castle Capital, LLC ("SCC") was registered in the state of Delaware on January 26,2015 and registered in the state of California as a foreign company on April 22,2015 by Cyril Lawrence, attorney for Defendant and SCC. In the Statement of Information filed for SCC on April 22,2015, Defendant was listed as its agent for service of process. In the Statement of Information filed for SCC on September 19,2016, Defendant's son, Jong Ki Yoon, was listed as sole member of SCC. Defendant controls SCC and uses it as one of the entities to carry put his EB-5 program.

13.     Hana Japan, Inc. ("HJI") was registered in the state of California on April 5,2006. Its principal place of business is located at 235 University Avenue in die City of Berkeley, County of Alameda. HJI is a Japanese steak house and teppanyaki-style restaurant. It is owned and controlled by Defendant and/or his family members.

14.     Hana Yoon Corporation ("HYC") was registered in the state of California on April 13, 1994. Its principal place of business is located at 7298 San Ramon Road, in the City of Dublin, County of Alameda. HYC is a Japanese steak house and teppanyaki-style restaurant. It is owned and controlled by Defendant and/or his family members.

IV.

SUBSTANTIVE ALLEGATIONS

A.    John Yoon Founded KS Aviation and Hired Defendant Shortly After

15.    Yoon is a licensed single-engine airplane pilot. He incorporated KS Aviation in the State of California in November 2003.

16.    SAA was originally established by the Everett family. Yoon acquired SAA by buying out its debt while SAA was in bankruptcy protection.

17.    On or around May 25, 2004, Yoon hired Defendant to serve as President and CFO of Plaintiff. Thereafter, Yoon remained to be Plaintiffs CEO and Secretary.

18.    On May 25, 2004, Yoon and Defendant signed a written agreement entitled "Unanimous Written Consent of the Shareholders", in which they agreed that they each owned 50%, or 500,000 shares, of Plaintiff s common stock.

19.    At the time, Yoon and Defendant also agreed that Yoon would be the public face of Plaintiff and would be primarily responsible for (a) liaising with airlines and governmental officials in the Asian market, from which SAA would recruit students for pilot training, and (b) ensuring that the fleet of training aircraft was adequate for the training purpose. Defendant would be responsible for administration and financial affairs of Plaintiff.

B.    Defendant Fraudulently Took Control of KS Aviation During Yoon's Absence and denied Yoon Access to Accounting Records Upon Yoon's Return

20.    In early June 2013, Yoon was seriously injured in a motorcycle accident. He was hospitalized and had to recover at home afterwards. He was unable to work at KS Aviation until February 2014.

21.    When Yoon returned to work in February 2014, he discovered that Defendant took over the control of KS Aviation by unilaterally (1) appointing three new Board members; and (2) changing corporate documents to reduce Yoon's shareholdings from 50% to 18.85% and to increase Defendant's shareholdings from 50% to 80.59%.

22.    Defendant also denied Yoon's access to Plaintiffs books and records, including the accounting records, upon repeated requests by Yoon.

23.    Yoon reported to the District Attorney's Office, County of Merced, about Defendant's illegal conduct in November 2014. The District Attorney's Office filed a criminal complaint against Defendant on January 13, 2016, alleging, among other things, that Defendant

falsified corporation documents and forged signatures of Yoon on various occasions with an intention to defraud third parties, including financial institutions. Defendant was convicted on April 18, 2017 and was placed on probation for three years.

24.     Yoon also filed a civil action against Defendant in the Superior Court of California, County of Merced, on June 29, 2015, both in the capacity of a shareholder of KS Aviation and derivatively on behalf of KS Aviation, alleging, among other things, that Defendant breached his fiduciary duty to KS Aviation and to Yoon.

25.     On September 2, 2016, Yoon and Defendant reached a Settlement Agreement, in which Defendant agreed to immediately resign from all positions he held at KS Aviation and return all shares of KS Aviation to Yoon.

26.     In or around September 2016, Yoon regained control of KS Aviation.

C.     Defendant Engaged in Systematic Embezzlement from Plaintiff During Yoon's Absence

27.     After regaining control of KS Aviation, Yoon retained forensic accountants to review the general ledger entries recorded by Defendant and discovered that Defendant falsified accounting records to book a significant amount of personal expenses as Plaintiffs business expenses. It was later discovered that Defendant might have also removed corporate documents to cover up his illegal activities.

28.     Based on the available accounting data, Yoon found out that from 2014 to 2016, Defendant misappropriated Plaintiffs corporate assets to benefit himself, his family members and business entities under his control and further wasted Plaintiffs corporate assets for the amount of $2,120,787.07. Defendant recorded these personal expenses as business expenses of Plaintiff. A true and correct copy of the summary of these fraudulent transactions entitled "Defendant's Personal Expenses Disguised as Business Expenses" is attached as Exhibit 1,

29.     Former accountants of Plaintiff who worked with Defendant informed Plaintiff that Defendant often instructed them to record personal expenses as business expenses. For example, they recalled that Defendant caused Plaintiff to pay for the construction/remodeling or maintenance work performed for and other expenses relating to his family business, HJI. Defendant then instructed the accountants to disguise these personal expenses as business expenses.

30. Since Defendant might have removed corporate documents, the above stated amount represents die amount that was verified by Plaintiff based on the available accounting data.

31. Yoon was not aware of Defendant's above fraudulent conduct until he had access to Plaintiffs accounting records in or around September 2016.

32. Yoon asked Defendant to return the corporate funds to Plaintiff repeatedly after discovering Defendant's embezzlement activities. Defendant refused to return the funds.

33. Defendant's embezzlement activities are summarized as follows:

1. Defendant Transferred a Large Amount of Cash from Plaintiff to His Family Members

34. Defendant transferred a large amount of money out of Plaintiffs business accounts and sent directly to his family members, including his son and his sister, via different means.

35. Defendant claimed that Plaintiff needed to pay commission to South Korean agents for recruiting students for Plaintiff in South Korea. Upon information and belief, Defendant used this channel to send money to his sister Jee Myun Yoon, who lives in South Korea. Defendant then recorded these entries on Plaintiffs general ledger as "Korea Bra[nch] Commission" or "Korea Commission." Based on the amount verified by Plaintiff, Defendant recorded at least $18,762 under such description from 2014 to 2016.

36. Although KS Aviation's corporate bylaws clearly state that employees, including executives, shall not hire their relatives to work for Plaintiff Defendant hired his son, Jong Ki Yoon, to work for Plaintiff from 2014 to April 2016. During this time period, Plaintiff paid Defendant's son $ 1,000 on a bi-weekly basis. As reflected by fee general ledger entries recorded by Defendant, fee total amount of employment related payment Plaintiff made on behalf of defendant's son, including payroll tax, is at least $61,823.72.

2. Defendant Used Plaintiffs Money to Fund His Personal Business

37. Defendant had a side business when he worked for Plaintiff from 2014 to 2016, which was the EB-5 regional investment program he ran and managed via different business entities under his control.

38. Although Yoon and Defendant started the EB-5 program together, in or around November 2013, Yoon informed Defendant that he was no longer interested in working on or investing in the EB-5 program. After November 2013, Yoon was not involved in the EB-5

program and did not agree to invest any capital, either via personal fund or by using the corporate fund of Plaintiff, to the program.

39.     In or around April 2016, after discovering Defendant's various misconduct, Yoon wrote a letter to U.S. Department of Homeland Security, requesting the agency to remove his name from the EB-5 program.

40.     As Plaintiffs executive, Defendant spent a lot of time working on this personal side business, including traveling frequently to Asia to attract EB-5 investors for the program.

41.     Although Plaintiff and Yoon had no financial interest in Defendant's EB-5 program and did not co-own the program with Defendant from 2014 to 2016, Defendant used a significant amount of money out of Plaintiffs business accounts to fund the operation of his personal EB-5 program during this time period.

42.     According to the general ledger entries recorded by Defendant, he used Plaintiff's money to pay for the following expenses of his personal EB-5 program: (a) travel expenses, including flight tickets, meals, and lodging; (b) expenses to entertain potential EB-5 investors, including flight tickets, meals, lodging, expenses to take these investors for local tour (such as gasoline); (c) marketing expenses for the EB-5 program, including printing marketing related documents and business cards and purchasing banners and signs; (d) professional expenses; and (c) rental expenses.

43.     Based on the records shown on Plaintiffs bank statements, from May 2014 and December 2015, Defendant transferred or caused Plaintiff to transfer $144,358.44 to SACD, one of the entities he controls and uses to run the EB-5 program. A true and correct copy of the account transfer record is attached as Exhibit 2.

3.     Defendant Used Third Parties as Conduits to Embezzle Money from Plaintiff

44.     Defendant also used different third parties as conduits to embezzle money out of Plaintiffs business accounts.

45.     Defendant signed a Consultant Agreement with Indochina Technology Services Inc. ("Indochina") in or around May 2013 on behalf of Plaintiff, during which Indochina agreed to recruit students for Plaintiff and Plaintiff agreed to pay commission based on the number of students recruited by Indochina. Someone named "Steve Iron" signed the Consultant Agreement on behalf of Indochina as its CEO.

46.     From 2013 to 2016, Defendant caused Plaintiff to pay Indochina $153,900. Presumably this amount was commission paid to Indochina for successfully recruiting students on behalf of Plaintiff. However, Plaintiff did not find any accounting entries recording revenue generated by Indochina during the same time period.

47.     Plaintiff conducted a general online search regarding Indochina in May 2018 and could not find any information regarding this company other than Indochina is an offshore company registered in British Virgin Islands. A true and correct copy of the information regarding Indochina that Plaintiff obtained via an online search is attached as Exhibit 3.

48.     Plaintiff also conducted a general online search by using the search terms "Steve Iron" and "Indochina" and could not find any information.

49.     The fact that Plaintiff could not find any information regarding Indochina is unusual and highly suspicious as a legitimate business should at least have a business address and contact information in order to attract customers or clients. A legitimate business should also list the names and qualifications of its executives.

50.     Based on the above information, Plaintiff believes that Indochina was an entity set up by Defendant solely for the purpose of embezzling money from Plaintiff.

51.     Another business entity that Defendant used to embezzle money from Plaintiff is Hong Kong Fortune Fly Resources Consulting Co. Ltd. ("Fortune Fly"). Defendant caused SAA to sign an Agency Agreement with Fortune Fly in 2012 and a Pilot Training Agreement with Fortune Fly on February 3, 2013.

52.     In the Agency Agreement, Fortune Fly agreed to act as an agent for SAA to recruit students from Shenzhen Donghai Airline Co. Ltd. ("SDA") and to manage relationship between SAA and SDA. The Agency Agreement further stated that SAA would receive $79,995 as training fee for each student recruited by Fortune Fly and that Fortune Fly would take any amount paid by SDA in excess of $79,995 (per student) as "agent fee". The Agency Agreement included a Supplement Agreement, which listed names of 17 students who purportedly would receive pilot training from SAA. Ken Kwan and a person named "Yang Zhang" (acted as President of Fortune Fly) signed the Agency Agreement on behalf of SAA and Fortune Fly, respectively.

53.     In the Pilot Training Agreement, SAA agreed to provide pilot training to 10 students provided by Fortune Fly and would charge Fortune Fly $82,500 for each student. The

Agreement was silent regarding whether SAA would provide any compensation to or reimburse any expenses from Fortune Fly. Defendant and a person named "Yang Zhang" signed the Pilot Training Agreement on behalf of SAA and Fortune Fly, respectively.

54. Defendant caused Plaintiff to pay $93,563.75 to Fortune Fly from 2013 to 2016. Based on the accounting records prepared by Defendant, students recruited or provided by Fortune Fly generated $141,193.75 revenue for Plaintiff during the same time period.

55. The amount of payment that Plaintiff made to Fortune Fly is rather high compared to the revenue Plaintiff was able to generate from students recruited or provided by Fortune Fly. Indeed, Fortune Fly received more than 66% of the revenue it generated for Plaintiff. To the minimum, this kind of arrangement is highly suspicious. This arrangement is also not supported both by the Agency Agreement and the Pilot Training Agreement entered into between the parties.

56. Plaintiff conducted a general online search regarding Fortune Fly and "Yang Zhang" (based on his capacity as President of Fortune Fly) in May 2018 and could not find any information regarding this company and "Yang Zhang" both on google.com and baidu.com, popular search engines in the United States and in China, respectively.

57. Since Defendant deleted and took away many accounting records and corporate documents, the above stated amount represents the amount that was verified by Plaintiff.

4. Defendant Treated Plaintiff as His Personal Piggy Bank

58. Defendant used Plaintiffs business fund and credit cards to pay for his personal expenses, including (a) luxury gifts, home furniture, and personal membership expenses; (b) personal travel expenses; (c) personal golf membership dues and related expenses; (d) kid's Law School Admission Test ("LSAT") preparation class and admission fees; (e) professional services relating to personal affairs; (f) home improvement projects; (g) grocery shopping; (h) and frequent dining.

59. Due to the large number of the fraudulent transactions, Plaintiff lists as below a few egregious examples for each of the above-listed category.

60. Luxury gifts, home furniture, and personal membership expenses:

| Date | General Ledger Description | Amount |
|------|---------------------------|--------|
| 3/3/2014 | Nordstrom | $630.58 |
| 5/25/2014 | Nordstrom | $247.53 |

| | | |
|---|---|---|
| 6/3/2014 | Points Rapid Rewards'4 | $1,017.50 |
| 9/13/2014 | My Awesome Body | $129 |
| 11/20/2014 | Ye-Won House of Jade, Bedroom Furniture | $4,100 |
| 11/29/2014 | Coach | $1,030.60 |
| 5/28/2015 | Golf Depot | $2,489.16 |
| 1/11/2016 | In-flight Duty | $148 |
| 2/17/2016 | Amazon Prime membership | $106.43 |

61.     Personal travel expenses: Defendant caused Plaintiff to pay $2,709.63 for a trip to Las Vegas from January 9,2015 to January 11,2015. Defendant had no need to conduct any business on behalf of Plaintiff during that time period and took this trip for personal pleasure. Defendant caused Plaintiff for pay for show tickets, flight tickets, hotel, and car rental expenses for the Las Vegas trip.

62.     Personal golf membership dues and related expenses: Defendant caused Plaintiff to pay for his golf membership dues from February 2014 to August 2015 at Rancho Del Rey Golf Club, located in the town of Atwater near Plaintiffs business address. The monthly membership fee was $155 per month in February 2014 and was increased to $170 per month by June 2015. Defendant also caused Plaintiff to pay for other expenses he incurred at Rancho Del Rey Golf Club. In addition, Defendant charged golf membership due and golf related expenses incurred at Canyon Lakes Golf Club and San Ramon Golf Club to Plaintiffs business credit card in May and June 2016.

63.     Kid's LSAT preparation class, law school admission, and language study expenses:

| Date | General Ledger Description | Amount |
|---|---|---|
| 7/11/2014 | Bridge-Linguatec Inc.' | $1,249.50 |
| 9/8/2014 | Bridge-Linguatec Inc. | $416.50 |
| 1/30/2015 | Kaplan Test Prep | $1,619 |
| 2/7/2015 | LSA Law School Admssn. | $170 |
| 2/15/2015 | LSA Law School Admssn. | $193 |

64. Professional services relating to personal affairs and personal business:

| Date | Ledger Description | Amount |
|------|-------------------|--------|
| 1/9/2014 | The Thomas Wilkins Company: Appraisal of County Merced 60 Unit Apt Project 4 | $ 2,500 |
| 1/2/2015 | Cyril Lawrence, Inc.: Revise assignment of LLC interest to Yoon family trust; Professional services; Review EB-5 and Related documents; Conference with Dan Jong and Jong K corporate structure EB-5. | $ 3,465.43 |
| 7/8/2015 | Brian Johnson: Back pay and buy out for 6% ownership for Sierra Air Center, Inc. | $41,608.31 |
| 7/17/2015 | Greenberg Traurig, LLP: Sierra Air Center Development LLC | $3,814.50 |
| 12/9/2015 | David Hirson & Partners, LLP: Sierra Group, Jong Ki Yoon | $26,230 |
| 4/1/2016 | Cyril Lawrence, Inc.: IRS Criminal | $21,058.01 |
| 4/1/2016 | Cyril Lawrence, Inc.: Sierra Dream Air Center, Sierra Air Center Management, Sierra Castle Capital, Sierra Flight and Sim Center | $1,583.94 |
| 8/30/2016 | David Hirson & Partners, LLP's Client Trust (IOLLA) | $10,000 |

65. Home improvement projects:

| Date | General Ledger Description | Amount |
|------|--------------------------|--------|
| 4/17/2015 | J.A. Hernandez Construction: Construct concrete pad for bbq dining | $1,440 $1,895 |
| 6/2/2015 | J.A. Hernandez Construction: Labor for pizza oven | |

66. Upon information and belief, Defendant hired J.A. Hernandez Construction ("JAH") to work on different projects relating to Plaintiffs facility and his residence from 2014 to 2016. While the descriptions of the above two general ledger entries accurately reflected the nature of

work performed by JAH (as Plaintiffs facility does not have a BBQ dining area or a pizza oven), Defendant might manipulate the descriptions of some of the work performed by JAH so Plaintiff could not ascertain the true purpose of the work performed solely based on the general ledger entries prepared by Defendants. Plaintiff believes that the amount of home improvement project expenses that Defendant caused Plaintiff to pay is much higher than the amount as stated in the above chart.

67. Frequent Grocery shopping expenses:

| Date | General Ledger Description | Amount |
|------|---------------------------|--------|
| 1/28/2014 | Korea Plaza Market | $132.84 |
| 8/10/2014 | 7-Elcven | $50 |
| 10/11/2014 | Safeway | $87.19 |
| 11/10/2014 | Hannam Chain | $87.29 |
| 12/8/2014 | Ranch Market | $76.08 |
| 12/17/2014 | Regional St. Ranch Market10 | $116.26 |
| 2/2/2015 | Ranch Market | $169.80 |
| 2/9/2015 | Regional St, Ranch Market | $168.94 |

68. The above listed amounts are few examples of the grocery shopping expenses that Defendant paid by using Plaintiffs business fund. Defendant's grocery shopping charges exhibit the following patterns: (a) the amounts are relatively small, often from $10-$20 to less than $100; (b) the expenses were incurred frequently, often on a weekly basis, sometime incurred several times within a week; (c) many of these charges incurred at Korean or Asian supermarkets; (d) some of the grocery stores Defendants visited were not near Plaintiffs facility at the city of Atwater; and (e) Plaintiff did not find receipts for majority of these expenses. For example, Hannam China is a Korean supermarket chain with several stores located near the city of Los Angeles and its surrounding areas, "Regional St, Ranch Market" refers to 99 Ranch Market located at 7333 Regional Street in Dublin, California. 99 Ranch Market is a popular Asian supermarket chain in California, Dublin is a city that is located about 90 miles away from the city of Atwater.

69. Frequent dining expenses: Defendant also used Plaintiffs business credit cards to pay for dining expenses. Defendant's dining charges exhibit the following patterns: (a) many of these charges contain small amounts, such as $ 10-$20; (b) Defendant incurred these charges on

a frequent basis, sometimes 4-5 times within a day; and (c) Plaintiff did not find receipts for majority of these expenses.

70.     As a corporate executive, Defendant could reimburse legitimate meal expenses if Defendant had business meals with Plaintiffs employees, customers, clients, or business partners. However, the above-listed patterns of Defendants' charges suggest that, at least for some of these instances, he most likely charged personal meals to Plaintiffs business credit card. It is unlikely that Defendant would need to take Plaintiffs business partners for lunch or dinner 4-5 times a day.

D.     Defendant Wasted Corporate Assets by Poor Management Style and Failing to Manage Plaintiffs Cash Flow Adequately

71.     Defendant exhibited a poor management style when he worked for Plaintiff, He often yelled at employees and used offensive and improper language when he talked to employees.

72.     As a result of Defendant's inappropriate behaviors, several employees brought civil actions against Plaintiff. Plaintiff had to incur a significant amount of legal fees to defend itself and to settle these actions.

73.     Defendant also failed to properly manage cash flow of KS Aviation. As a result, Plaintiff incurred a large amount of late fees and interest charges for failing to pay for business credit card charges (which contained a large amount of personal charges for Defendant and his family members) and bank loans on time and for failing to pay vendors as requested.

E.     Defendant Removed Accounting Records and/or Corporate Documents to Cover Up His Systematic Stealing from KS Aviation.

74.     After regaining control of KS Aviation, Yoon found out that Defendant took away evidence to cover his illegal conduct, including depleting Plaintiffs operation fund and pushing KS Aviation to the verge of bankruptcy.

75.     Yoon retained a forensic accounting firm to review Plaintiffs accounting records maintained by Defendant. Based on the review of the forensic accountants, accounting records are incomplete and supporting documents regarding various accounting entries are missing,

76.     Defendant took away boxes of corporate documents and/or accounting records on September 4,2016, around the time he resigned from Plaintiff.

. . . . .

77. KS Aviation set up surveillance cameras on the facility for security purposes. The surveillance tape dated September 4, 2016 (Sunday) contains images of Defendant's and his son's leaving Plaintiffs facility with boxes of documents.

78. Since Defendant took away these documents on a Sunday when no KS Aviation employees were on site, Plaintiff does not know what documents were removed by Defendant.

## V.

## FIRST CLAIM FOR RELIEF Deceit –

## Fraudulent Concealment

79. Plaintiff repeats all previous allegations as if set forth in full herein.

80. Defendant concealed material facts from Plaintiff including that he misappropriated corporate fund from Plaintiff throughout his employment with Plaintiff and further manipulated accounting records to cover his illegal conduct.

81. Defendant, in his capacity as an officer and director of Plaintiff, owes fiduciary duty to Plaintiff, including but not limited to, duty of loyalty, duty to disclose material facts that he concealed from Plaintiff, and duty of care.

82. Defendant intentionally concealed the material facts from Plaintiff with an intent to defraud Plaintiff.

83. Plaintiff was not aware of Defendant's systematic embezzlement by and after September 2016, when Yoon took over Plaintiff and retained a forensic accounting firm to review relevant accounting records. Plaintiff would not have allowed Defendant to embezzle from its corporate fund if it had knowledge of Defendant's embezzlement.

84. As a result of Defendant's systematic embezzlement activities, Plaintiff suffered a significant harm.

## VI.

## SECOND CLAIM FOR RELIEF

## Breach of Fiduciary Duty

85. Plaintiff repeats all previous allegations as if set forth in frill herein.

86. Defendant, in his capacity as an officer and director of Plaintiff, owes fiduciary duty to Plaintiff, including but not limited to, duty of loyalty and duty of care.

87. From 2014 to 2016, Defendant has breached his fiduciary duty to Plaintiff by (1) diverting corporate funds for his personal use, including to benefit his family members and his

personal business; (2) denying Yoon access to Plaintiff's books and records; and (3) hid evidence relating to his illegal conduct, including but not limited to, accounting records of Plaintiff.

88. Defendant's breach has caused a substantial monetary loss to Plaintiff.

VII.

THIRD CLAIM FOR RELIEF

Conversion

89. Plaintiff repeats all previous allegations as if set forth in full herein.

90. Plaintiff was the rightful owner of corporate funds embezzled by Defendant and the company properties illegally possessed by Defendant when he left KS Aviation in September 2016.

91. Defendant wrongfully converted the ownership of the corporate funds and company properties by refusing to return the funds and the properties to Plaintiff

92. Plaintiff suffered damages as a result of Defendant's wrongful conversion.

VIII.

PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for judgment as follows:

A. The Court direct Defendant to return the corporate funds and company properties to Plaintiff, for $2,120,787;

B. The Court award Plaintiff punitive or exemplary damages as provided for by statute for willful and malicious conduct;

C. The Court award Plaintiff the costs of this action, including a reasonable allowance for the fees and expenses of Plaintiff s attorneys and experts; and

D. The Court grant such other or further relief as the Court may deem just and proper.

Respectfully submitted.

Dated: February 24, 2020

Law Offices of Michael Abbott

By : _____

Michael L. Abbott
Law Offices of Michael Abbott
126 South Third Avenue
Oakdale, CA 95361
solvable problems@gmail.com

## PROOF OF SERVICE

I declare that I am employed in the County of Stanislaus, State of California, I am over the age of eighteen (18) years and not a party to the within entitled cause, and my business address is LAW OFFICES OF MICHAEL ABBOTT, 126 South Third Avenue Oakdale, CA 95361. On the date set forth below, I served the following documents in the manner(s) selected:

### OPPOSITION TO MOTION OF CYRIL LAWRENCE, INC. FOR EMPLOYMENT BY DEBTORS IN CHAPTER 11 PROCEEDING AND MOTION TO STRIKE ORDER APPROVING ORDER

[ X ] **(U.S. Mail)** by placing a true and correct copy thereof enclosed in a sealed envelope, mailed in the United States mail with first class postage fully prepaid, at Oakdale, California, addressed as set forth below.

[ ] **(Office Mail)** by placing a true and correct copy thereof enclosed in a sealed envelope, with first class postage fully prepaid, for collection and mailing at the LAW OFFICES OF MICHAEL ABBOTT, 126 South Third Avenue, Oakdale, CA 95361, addressed as set forth below. I am readily familiar with the business' practice for collection and processing of correspondence for mailing with the United States Postal Service. Correspondence so placed would be deposited with the United States Postal Service that same day in the ordinary course of business.

[ ] **(Overnight Delivery)** by placing a true and correct copy thereof enclosed in a sealed envelope, for overnight delivery, in a box or other facility regularly maintained by an express service carrier, or delivered to an authorized courier or driver authorized by person on whom it is to be served, at the office address as last given by that person on any document filed in the cause and served on the party making service or at that party's place of residence.

[ ] **(Personal Delivery)** by personal delivery to the party or attorney at the address set forth below.

[ ] **(Facsimile)** by transmission to a facsimile machine maintained by the person on whom it is served at the facsimile machine telephone number as last given by that person on any document filed in the cause and served on the party making service.

[ ] **(Electronic Transmission)** by scanning and electronically mailing to an electronic mail address maintained by the person on whom it is served at the e-mail address as last given by that person on any document filed in the cause and served on the party making service.

| | |
|---|---|
| **CYRIL LAWRENCE**<br>**CYRIL LAWRENCE, INC.**<br>**2111 K STREET**<br>**MERCED, CA 95340** | **LAWRENCE L. SZABO**<br>**LAW OFFICES OF LAWRENCE L. SZABO**<br>**3608 GRAND AVE. #1**<br>**OAKLAND, CA 94610** |

**JOSE RAUL ALCANTAR VILLAGRAN**
**NASSIRI AND JUNG LLP**
**1700 MONTGOMERY STREET, #207**
**SAN FRANCISCO, CA 94111**

...

1  I declare that the foregoing is true and correct, and that this declaration was executed in Oakdale,
2  California on Feb 24, 2021.

3  _____
   Michelle Kendig