Christopher Rillo (SBN 112009)
christopher.rillo@bakerbotts.com
Raerani Reddy (SBN 340475)
rani.reddy@bakerbotts.com
**BAKER BOTTS LLP**
101 California Street, Suite 3200
San Francisco, California 94111
Telephone: (415) 291-6200
Facsimile: (415) 291-6300

*Counsel for KS Aviation, Inc., Xing Kong Aviation
Service, LLC, John Yoon, Chen Zhao, and Xin Han
Aviation, LLC*

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re<br><br>    DANIEL B. YOON,<br>    JEENEE S. YOON<br><br>Debtor | Bankruptcy Case No.: 19-42763<br><br>Adv. Proc. No.: 20-04021<br><br>Chapter 11 |
| DAN YOON,<br><br>        Plaintiff,<br><br>v.<br><br>KS AVIATION, INC., XING KONG<br>AVIATION SERVICE, LLC, JOHN YOON,<br>CHEN ZHAO, AND XIN HAN AVIATION,<br>LLC,<br><br>        Defendants. | **DEFENDANTS KS AVIATION, INC.,<br>XING KONG AVIATION SERVICE,<br>LLC, JOHN YOON, CHEN ZHAO AND<br>XIN HAN AVIATION, LLC'S REPLY<br>IN SUPPORT OF MOTION FOR<br>PARTIAL SUMMARY JUDGMENT**<br><br>Hearing:  May 24, 2024<br>Time:    11:00 A.M.<br><br>The Honorable Charles Novack |

# TABLE OF CONTENTS

I.  ARGUMENT ..............................................................................................................1

    A.  Defendants Are Entitled To Summary Judgment On The First And Second Causes Of Action Because There Is No Evidence Demonstrating The Requisite Conditions For Repayment Have Been Met. ........................................2

        1.  The Settlement Agreement entitles Plaintiff to repayment of only those loans where he is listed as the payee. ...................................................2

        2.  The two conditions precedent to repayment of Plaintiff's direct loans are unsatisfied. ....................................................................................4

    B.  Defendants Are Entitled To Summary Judgment On Plaintiff's Fifth Cause Of Action For Breach Of Contractual Indemnity. .......................................8

        1.  Plaintiff has no right to indemnity on the third category of loans, because he has no evidence these loan proceeds were spent on the "simulator facility and its contents." ...............................................8

        2.  Plaintiff concedes he has not satisfied payment of the BAED loan and therefore has no right to contractual indemnity. .................................10

    C.  Plaintiff Has No Evidence That His Alleged Damages Are The Result Of An Alleged Breach By Defendants. ...............................................................12

    D.  Defendants Are Not Liable Under The Settlement Agreement. ...........................13

        1.  KS Aviation is only bound by the provisions of the Settlement Agreement where it is explicitly referenced. ..............................................13

        2.  The "non-settling defendants" are not liable under either successor liability or indirect liability. ..........................................................15

    E.  Plaintiff's Declaration Contains Inadmissible Evidence. .....................................15

II.  CONCLUSION ..........................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*British Airways v. Boeing Co.*,
   585 F.2d 946 (9th Cir.1978) ...................................................................................7

*Brown v. Goldstein*,
   34 Cal.App.5th 418 (2019) ................................................................................6, 7

*Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1061 (9th Cir. 2011) ......8, 9

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ............................................................................................1

*Dore v. Arnold Worldwide, Inc.*,
   38 Cal. 4th 384 (2006) ...................................................................................2, 10

*Dunne & Gaston v. Keltner*,
   50 Cal.App.3d 560, 123 Cal.Rptr. 430 (1975) ...................................................14

*F.T.C. v. Inc21.com Corp.*,
   745 F. Supp. 2d 975 (N.D. Cal. 2010), *aff'd*, 475 F. App'x 106 (9th Cir. 2012) .................1, 8

*Hammes Co. Healthcare, LLC v. Tri-City Healthcare Dist.*,
   No. 09-CV-2324 JLS (NLS), 2010 WL 11442887 (S.D. Cal. Jan. 28, 2010) ........................14

*Hansen v. United States*,
   7 F.3d 137 (9th Cir. 1993) ...................................................................................1

*Hot Rods, LLC v. Northrop Grumman Systems Corp.*,
   242 Cal.App.4th 1166 (2015) ......................................................................2, 4, 10

*In re Miller*,
   253 B.R. 455 (Bankr. N.D. Cal. 2000), *aff'd*, 284 B.R. 121 (N.D. Cal. 2002), *aff'd sub nom.*
   *Miller v. United States*, 363 F.3d 999 (9th Cir. 2004) ............................................14

*Indenco, Inc. v. Evans*,
   201 Cal.App.2d 369, 20 Cal.Rptr. 90 (1962) .......................................................15

*Lloyd's Underwriters v. Craig & Rush, Inc.*,
   26 Cal.App.4th 1194 (1994) ...............................................................................2

*Mackie v. Rieser*,
   296 F.3d 909 (9th Cir. 2002) ............................................................................8, 9

*Moore v. James H. Matthews & Co.*,
   682 F.2d 830 (9th Cir. 1982) ..............................................................................11

Case: 20-04021   Doc# 277   Filed: 05/17/24   Entered: 05/17/24 15:25:19   Page 3 of 21

*Neely v. St. Paul Fire and Marine Insurance Co.*,
  584 F.2d 341 (9th Cir.1978) ...................................................................................8, 9

*Nissan Fire & Marine*,
  210 F.3d 1099 (9th Cir. 2000)....................................................................................5, 12

*Tommy Bahama Grp., Inc. v. Sexton*,
  No. C07-06360 EDL, 2009 WL 4673863 (N.D. Cal. Dec. 3, 2009), *aff'd*, 476 F. App'x 122 (9th
  Cir. 2012) .........................................................................................................................1

**OTHER AUTHORITIES**

Fed. R. Civ. P. 56(a) ......................................................................................................1

Fed. R. Evid. 1002 .......................................................................................................15

Fed. Rs. Evid. 801, 802, 803, 804 ...............................................................................15

Federal Rule of Evidence 602 .....................................................................................15

Judicial Council of California Civil Jury Instructions (2023) No. 325........................6, 8

Case: 20-04021   Doc# 277   Filed: 05/17/24   Entered: 05/17/24 15:25:19   Page 4 of
21

# I. ARGUMENT

Plaintiff[1] has failed "to make a showing sufficient to establish the existence of an element essential to [Plaintiff] case, and on which [Plaintiff] will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Because Plaintiff cannot establish the existence of elements essential to his case, he instead uses his opposition to rewrite history. *See generally* Opposition of Dan Yoon to Defendants' Partial Motion for Summary Judgment (Dkt. No. 276) ("Opp."). Using a self-serving declaration to bridge the gaps in his speculative evidence, Plaintiff further asserts that he should be given the benefit of the doubt as a purported innocent victim of Defendants' calculated drafting of the Settlement Agreement.[2,3] Unsurprisingly, this is a far cry from the truth. The State Court entered a factual finding directly to the contrary. *See* Ex. 13 to MSJ, Hansen Decision at 11 (observing that Plaintiff is a "sophisticated businessman …. experienced in hiring … attorneys and CPAs," whose bargaining position was equal to that of Defendants); *see also id.* at 4 (observing that Plaintiff is "not a credible witness"); *id.* (observing that Plaintiff likely forged KS Aviation documents to grant himself controlling ownership of Sierra Air Development Company, a million-dollar bonus, and loans for the 767 Boeing simulator). In fact, Plaintiff's criminal mismanagement of KS Aviation left it in shambles. *Id.* at 3. This action is nothing more than Plaintiff's latest attempt to finish the job. In other words, "there is no genuine dispute as to any material fact and [Defendants] [are] entitled to judgment as a matter of law," (Fed. R. Civ. P. 56(a)), on the first, second, and fifth causes of action.

---

[1] Capitalized terms have the same meaning ascribed in Dkt. No. 273.

[2] "A declarant's bald, uncorroborated, and conclusory assertions need not be credited to defeat summary judgment." *F.T.C. v. Inc21.com Corp.*, 745 F. Supp. 2d 975, 1000 (N.D. Cal. 2010), *aff'd*, 475 F. App'x 106 (9th Cir. 2012); *see also Tommy Bahama Grp., Inc. v. Sexton*, No. C07-06360 EDL, 2009 WL 4673863, at *3 (N.D. Cal. Dec. 3, 2009), *aff'd*, 476 F. App'x 122 (9th Cir. 2012) ("the Court will not consider conclusory statements, legal conclusions or conjecture, put forth without an evidentiary basis, as sufficient to defeat summary judgment"); *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993) ("When the nonmoving party relies only on its own affidavits to oppose summary judgment, it cannot rely on conclusory allegations unsupported by factual data to create an issue of material fact").

[3] *See* Opp. at 16:11-13 (claiming that Defendants "knowingly" negotiated terms while Plaintiff was "without the aid of his counsel"); *Id.* at 10:3–4 (claiming that Defendants were the sole drafters); Declaration of Dan Yoon (Dkt. No. 276-1) ("D. Yoon Decl.") ¶ 64 (claiming that Defendants were the sole drafters).

Case: 20-04021   Doc# 277   Filed: 05/17/24   Entered: 05/17/24 15:25:19   Page 5 of 21

**A. Defendants Are Entitled To Summary Judgment On The First And Second Causes Of Action Because There Is No Evidence Demonstrating The Requisite Conditions For Repayment Have Been Met.**

Defendants are entitled to summary judgment on the first and second causes of action. As a threshold matter, the universe of direct loans covered by the Settlement Agreement is small, covering only those direct loans where Plaintiff is listed as the payee. Plaintiff is entitled to repayment of these loans only *after* two conditions precedent are met: (1) KS Aviation must regain its financial footing; and (2) a CPA must be appointed to validate Plaintiff's loans. Through no fault of Defendants, neither condition has been satisfied. Thus, Plaintiff is not entitled to repayment of his direct loans.

**1. The Settlement Agreement entitles Plaintiff to repayment of only those loans where he is listed as the payee.**

As a threshold matter, the plain language of the Settlement Agreement *unambiguously* entitles Plaintiff to repayment of only those direct loans where Plaintiff is the payee ($406,689, $255,670, $656,710, and $603,713), subject to certain express conditions precedent. KS Aviation has no duty to repay Plaintiff for loans made by Jenee Yoon, Hana Yoon, or Hana Japan (totaling $538,549.27). Apart from his self-serving declaration and a blatant lie about his lack of counsel during settlement negotiations[4], Plaintiff has provided no evidence to the contrary.

"In interpreting a contract, the objective intent, as evidenced by the words of the contract is controlling. We interpret the intent and scope of the agreement by focusing on the usual and ordinary meaning of the language used and the circumstances under which the agreement was made." *Lloyd's Underwriters v. Craig & Rush, Inc*., 26 Cal.App.4th 1194, 1197–98 (1994). While "extrinsic evidence can be admitted to explain the meaning of the contractual language at issue, … it cannot be used to contradict it or offer an inconsistent meaning. The language, in such a case, must be reasonably susceptible to the proposed meaning." *Hot Rods, LLC v. Northrop Grumman Systems Corp.,* 242 Cal.App.4th 1166, 1175–76 (2015) (internal citations omitted); *see also Dore v. Arnold Worldwide, Inc*., 38 Cal. 4th 384, 391 (2006).

Here, the plain language of the Settlement Agreement explicitly precludes Plaintiff's

---

[4] "The evidence supports findings that [Plaintiff's counsel] did have input into the final settlement agreement." Ex. 13 to MSJ, Hansen Decision at 6.

entitlement to repayment for loans from Jeenee Yoon, Hana Yoon, or Hana Japan:

> [A]ll funds owed **to Dan** that are clearly and legally documented as official loans **by Dan** to the corporation will be determined by an accredited outside and neutral Certified Public Accountant. Such funds will be repaid once the Company has regained its financial footing and all past due debts are brought current, all pending judgments against the Company are resolved and that sufficient operating capital is on hand to meet current business requirements, including updating of the aircraft fleet and maintenance operations.

Ex. 4 to MSJ, Settlement Agreement at 2 (emphasis added). The names of Jeenee Yoon, Hana Yoon, and Hana Japan are conspicuously absent in this clause, because it was *not* the intent of the parties to entitle Plaintiff to repayment of loans from these parties. A person's name is meant to identify that person only. In line with common sense, "Dan" is defined nowhere in the Settlement Agreement to include his wife—a distinct person—or his businesses—legally distinct entities owned by persons other than just Plaintiff. Plaintiff's expansive interpretation of his name clearly contradicts the ordinary meaning of the contractual language.

That Plaintiff intended otherwise is not only irrelevant, as explained above, but also a lie. Plaintiff assigned these latter loans to himself on the eve of filing this instant suit, a year *after* the Settlement Agreement was signed, because he *knew* that the Settlement Agreement did not entitle him to repayment of these loans. Elsewhere in his Opposition, Plaintiff concedes that whether entities draw from "the same pot of money" has *no* bearing on their distinct legal identities. Opp. at 16:14; 21:27–22:8 ("Hana Japan will equitably have a right to full repayment from Dan for its payment" to BAED); 22:13 ("Hana Japan, through its claim for contribution, is a creditor of Plaintiff"); and 22:25–26 ("The obligation under the BAEDC remains owed by Dan, but to Hana Japan"). Plaintiff cannot, in good faith, assert a more expansive definition of "Dan" here while relying on the narrower definition elsewhere to demand that Defendants indemnify him for loans paid by his business, Hana Japan. *See also infra* Section B(2). If "it was always [Plaintiff's] understanding that 'Dan' included [his] wife and the two companies [he] control[s] and own[s] with [his] family," Opp., D.Yoon Decl. (Dkt. No. 276-1) ¶ 59, then these names should have appeared in the Settlement Agreement. That he did not specifically include them undercuts his revisionist history.

In sum, the language of the Settlement Agreement is not "reasonably susceptible" to Plaintiff's

expansive interpretation of his name. *See Hot Rods*, 242 Cal.App.4th at 1175–76. This Court should reject his bad faith attempt to assign these additional debts of $538,49.27 in direct loans from Jeenee Yoon, Hana Yoon, and Hana Japan to himself.

### 2. The two conditions precedent to repayment of Plaintiff's direct loans are unsatisfied.

#### a. Defendants' interrogatory responses raise the factual predicates for this defense.

Plaintiff falsely alleges that Defendants are precluded from raising this argument now because they "failed to disclose [its] factual predicates" in their interrogatory responses. Opp. at 11:5–7. In fact, Defendants did assert that that they had no duty to make payments on Plaintiff's direct loans because, as Plaintiff concedes, KS Aviation remains unprofitable and no CPA was appointed.

First, Defendants asserted that KS Aviation remains unprofitable. *See* Ex.19 attached to Declaration of Christopher J. Rillo in Support of Defendants' Reply in Support of Motion for Partial Summary Judgment, John Yoon's Response to Interrogatory No. 11 ("Defendant avers that the language of the Settlement Agreement speaks for itself. Plaintiff left KS Aviation on the brink of insolvency, unable to make payroll. The Settlement Agreement speaks very clearly about conditions precedent to any duty owed by KS to pay loans alleged by Plaintiff to be due").[5] KS Aviation's unprofitability remains unchanged since November 2021, when Defendants submitted these interrogatory responses.

Second, Plaintiff acknowledges in *his* interrogatory that the appointment of a CPA is a condition precedent to repayment of Plaintiff's direct loans. *See* Opp. at 11:9–13; Ex. P to Opp., Interrogatory No. 7 to KSA ("Set forth the [contact information for] the outside and neutral Certified Public [sic] that was hired to determine what 'funds owed to Dan that are clearly and legally documented as official loans by Dan to the corporation' *as required by Paragraph 2* of the Settlement Agreement") (emphasis added). KS Aviation's response clearly states that this CPA has not been appointed. *See* Ex. Q to Opp., KSA Response to Interrogatory No. 7 ("Defendant has not engaged any

---

[5] *See also* Ex. Q to Opp., KSA Response to Interrogatory No. 10 ("This interrogatory question has been asked and answered in multiple … written discovery … in this matter previously. *Plaintiff is directed to … prior discovery in this matter.* Without waiving this objection, Defendant avers that all such duties, *if due*, are contingent upon Plaintiff performing his duties under the Settlement Agreement") (emphasis added).

accountants to address the issues in the complaint on file herein and will not / cannot until Plaintiff performs [his] duties thereunder").

Lastly, Plaintiff bears the burden of proving that the requisite conditions precedent have been met. *See Nissan Fire & Marine*, 210 F.3d 1099, 1102–03 (9th Cir. 2000) (holding that, if moving party shows nonmoving party lacks evidence to carry burden of persuasion, then nonmoving party "must identify with reasonable particularity enough evidence supporting its claim or defense to create a genuine dispute of material fact to defeat the motion"). Even if Defendants were barred from producing evidence showing that a CPA has not been appointed or that KS Aviation remains unprofitable, Defendants should still be granted summary judgment on the first and second causes of action because Plaintiff has produced no evidence to suggest that a CPA was appointed or that KS Aviation is profitable. Rather, Plaintiff has conceded these points.

### b. Through no fault of Defendants, KS Aviation continues to be unprofitable.

Pursuant to Section 2 of the Settlement Agreement, Defendants must repay Plaintiff's direct loans only after KS Aviation "has regained its financial footing and all past due debts are brought current, all pending judgments against the Company are resolved and … sufficient operating capital is on hand to meet current business requirements." Ex. 4 to MSJ, Settlement Agreement at 2. Since neither KS Aviation nor its purchaser Xing Kong are profitable, this condition precedent is unsatisfied. *See* MSJ at 8:12–9:12. Thus, Plaintiff is not owed repayment of his direct loans.

Plaintiff concedes that this condition precedent to repayment of his direct loans has not been satisfied. He concedes that KS Aviation remains unprofitable. *See* Opp. at 14:10 ("Plaintiff concedes that KSA is not profitable"). Further, he fails to address—and thus implicitly concedes—Defendants' proof that Xing Kong also remains in the red. *See* MSJ at 9:7–12 ("The most recent profit and loss statements, which reflect Xing Kong's financial status after KS Aviation became effectively defunct, show that the business continues to operate at a loss"); Ex. 3 to MSJ, Xing Kong Aviation Service, LLC, Profit & Loss for 2019, 2020, 2021, and 2022. Plaintiff had a full opportunity to take discovery to demonstrate that Xing Kong is profitable.

Plaintiff's attempt to circumvent this condition precedent misses the mark. He argues that KS

Aviation's unprofitability should not matter because, allegedly, Xing Kong acquired KS Aviation without consideration. Opp. at 14:16–17. Assuming without conceding this point,[6] Defendants again note that Xing Kong is *also* unprofitable. If "Xing Kong is the mere continuation of KSA," (4AC ¶ 29), then Xing Kong's unprofitability is KS Aviation's unprofitability.[7] Put another way, KS Aviation is unprofitable not because of its allegedly fraudulent transfer to Xing Kong but, simply, *because*.[8] The profitability condition thus applies and is not met.

### c. Through no fault of Defendants, an outside and neutral CPA has not yet been appointed to validate Plaintiff's loans.

Section 2 conditions repayment of Plaintiff's direct loans also upon the appointment of "an accredited outside and neutral Certified Public Accountant" to determine "all funds owed" to Plaintiff. Ex. 4 to MSJ, Settlement Agreement at 2. Plaintiff does not dispute that this CPA was never appointed. Instead, Plaintiff alleges that it was Defendants' job to hire the CPA. In support, he baldly declares that this was the intent of the parties (Opp. at 13:10–11); that his interpretation makes sense (*Id.* at 13:13–20); and that KS Aviation apparently conceded the point in its interrogatory responses (*Id.* at 13:21–26). Without more, this is insufficient to show a dispute of material fact sufficient to defeat summary judgment.

"When there is no material conflict in the extrinsic evidence, the trial court interprets the contract *as a matter of law*. This is true even when conflicting inferences may be drawn from the undisputed extrinsic evidence or that extrinsic evidence renders the contract terms susceptible to more than one reasonable interpretation." *Brown v. Goldstein,* 34 Cal.App.5th 418, 433 (2019) (emphasis added). No material conflict exists where the extrinsic evidence is speculative. Fed. R. Civ. P. 56(e) requires the party opposing summary judgment "to set forth specific facts" if he is to defeat the motion. It is not enough to come up with the "supposition, speculation, and conclusory argument of counsel."

---

[6] To the extent that Plaintiff is using this argument to reassert his third cause of action, this Court should disregard it. Defendants have not moved for summary judgment on this cause of action.

[7] Plaintiff's second cause of action for breach of the covenant of good faith and fair dealing fails for the same reason. He cannot show that Defendants prevented Plaintiff from receiving the benefits under the contract by selling KS Aviation to Xing Kong. *See* Judicial Council of California Civil Jury Instructions (2023) No. 325.

[8] Plaintiff voluntarily assumed substantial risk when he agreed to condition repayment of his direct loans to KS Aviation upon its financial health, which he knew was trending downhill at the time of signing the Settlement Agreement. *See* MSJ at 9:13–25, 10:1–7; Ex. 13 to MSJ, Hansen Decision at 9 (noting that Plaintiff is an experienced businessman whose agreement was not obtained through fraud or duress).

Case: 20-04021   Doc# 277   Filed: 05/17/24   Entered: 05/17/24 15:25:19   Page 10 of 21

*British Airways v. Boeing Co.,* 585 F.2d 946, 954 (9th Cir.1978).

Here, Plaintiff provides no factual data, only flawed reasoning that—importantly—leaves open the possibility of Plaintiff hiring the CPA. That Plaintiff "agreed as part of the settlement to relinquish all interests and positions at KSA," (Opp. at 13:14–15), does not affect his ability to hire an outside CPA and coordinate with KS Aviation to have this CPA review the documents in KS Aviation's possession. That Plaintiff "asserts [his loans] are valid," (Opp. at 13:16–17), also does not prevent Plaintiff from appointing a *neutral* CPA to review those loans. Finally, even if KS Aviation did insist upon the appointment of a CPA, that does not imply that "KSA is the party who would hire the [CPA]." (Opp. at 13:17–19). *Plaintiff* is requesting repayment of direct loans that he made to KS Aviation, so it is in Plaintiff's interest to hire an accredited neutral CPA to validate these loans.

Further, KS Aviation's interrogatory response does not concede Plaintiff's interpretation of this clause. It states only that "all such duties, *if due*, are contingent upon Plaintiff performing his duties under the Settlement Agreement, including the court-ordered return of corporate shares in his possession," and "Defendant has not engaged any accountants to address the issues in the complaint on file herein and will not / cannot until Plaintiff performs [his] duties thereunder." Ex. Q to Opp., KSA Response to Interrogatory No. 7 (emphasis added). That KS Aviation would not hire a CPA until Plaintiff performed certain duties does not suggest that KS Aviation is the *only* party that *could* hire a CPA; Plaintiff remains equally able to hire a CPA to validate his loans. Further, it bears repeating that Plaintiff did not actually return any corporate shares until February 2023—six years after he filed this instant suit, (Opp. at 16:2), and did not disavow his right to the final 264,155 shares represented by Stock Certificate No. 15 until May 7, 2024 (Opp. at 17:6–8). [9]

In sum, "there is no material conflict in the extrinsic evidence." *Brown,* 34 Cal.App.5th at 433. The Settlement Agreement, Plaintiff's declaration, and Defendants' interrogatory responses leave open the possibility of Plaintiff hiring a CPA to validate his loans.[10] As no CPA was appointed, the

---

[9] Plaintiff was judicially directed to return all shares in his possession. MSJ Order at 7:20-22. It is undisputed that the shares represented by Stock Certificate No. 15 was issued to Plaintiff. Plaintiff does not challenge this. Rather, he appears to suggest—years later—that he misplaced the certificate and asks that Defendants replace it themselves. This is too little, too late. Plaintiff should have returned these shares or instructed Defendants to replace the shares *in 2017.*

[10] Plaintiff's second cause of action for breach of the covenant of good faith and fair dealing fails for the same

condition precedent remains unsatisfied. *See* MSJ at 7:5–12.

### B. Defendants Are Entitled To Summary Judgment On Plaintiff's Fifth Cause Of Action For Breach Of Contractual Indemnity.

Plaintiff has no right to indemnity for the **third** category loans because he has no non-speculative proof that they were spent on the simulator facility or its contents. Further, he retains no right to indemnity for the **second** category loans because neither he nor any entity that can seek contribution from Plaintiff has paid these loans.

#### 1. Plaintiff has no right to indemnity on the third category of loans, because he has no evidence these loan proceeds were spent on the "simulator facility and its contents."

Plaintiff baldly alleges that the **third** category of loans was spent on the simulator facility and its contents. His support is a mere two documents showing the cost of the simulator and facility ($5,308,708) and the payment schedule for the simulator (showing the final payment due on July 31, 2014). Because these documents do not show that the **third** category of loans was spent on the simulator facility or its contents, Plaintiff bridges the gap with rank speculation insufficient to defeat summary judgment. *F.T.C.*, 745 F. Supp. 2d at 1000 (uncorroborated declaration "need not be credited to defeat summary judgment"); *see also Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1061 (9th Cir. 2011) (summary judgment against plaintiff affirmed where the "evidence adduced by [plaintiff] establishes only that this set of events could conceivably have occurred; it does not give rise to a reasonable inference that it did in fact occur"); *Mackie v. Rieser*, 296 F.3d 909, 916 (9th Cir. 2002) (summary judgment against plaintiff affirmed where plaintiff's "theory is no less speculative than [the Court's] [alternate theory]"); *Neely v. St. Paul Fire and Marine Insurance Co.,* 584 F.2d 341, 346 (9th Cir.1978) (summary judgment against plaintiff affirmed where jury would have to rely "upon surmise and speculation").

First, Plaintiff fudges the math to suit his own ends. He declares, with no evidence, that ""[i]n 2014, KSA had its first significantly profitable year, with an estimated profit of $1,000,000." Opp. at

---

reason. Because Plaintiff is equally able of hiring a CPA, Defendants did not prevent Plaintiff from receiving the benefits under the contract by failing to hire a CPA. *See* Judicial Council of California Civil Jury Instructions (2023) No. 325.

19:11-12. He claims that this amount was put toward the simulator and facility, leaving a shortfall of approximately $1.2 million that, conveniently, equaled the **third** category loan amount—suggesting that these loans were used to cover the balance. *Id.*, citing D. Yoon Decl. at ¶¶ 28–29. But Plaintiff also claims that the $1,000,000 in profits was not readily available to spend, thus undercutting his jigsaw puzzle math. *Id.* Further, he provides no proof for his assertion that KS Aviation made only $1,000,000 in 2014 and does not acknowledge the possibility that KS Aviation covered simulator-related costs using a reserve of funds acquired before 2014.[11]

Second, Plaintiff falsely assumes that KS Aviation had no other reason to take out these loans. *See* Opp. at 20:7–10 (claiming that KS Aviation had "no reason to take out loans except for capital investments" in the simulator and its facility). Even if disbursement of the **third** category loans does roughly[12] align with the simulator payment schedule, (*id.* at 18:24–25), this does not mean that the loans were used on the simulator or facility. A profitable company may take out sizeable loans for any number of business reasons—KS Aviation was a growing business at the time and needed to fund various necessities, such as boarding students and maintaining expensive equipment. Plaintiff is unable to provide any concrete evidence that these loan proceeds were used in the specific way he alleges. In fact, Plaintiff's own careless, if not malicious, abuse of the company's records makes it impossible to determine how the loan proceeds were used. *See* Defendants' Motion for Patrial Summary Judgment (Dkt. No. 273) ("Motion") at 12 (citing Salcido Decl. ¶ 9). Simply making up a story to bridge the gap between the amount owed for the purchase of the simulator and the amount taken out for the **second** category of loans is not even close to sufficient proof that the **third** category of loans were used in this manner. *See Cafasso*, 637 F.3d at 1061; *Mackie*, 296 F.3d at 916; *Neely*, 584 F.2d at 346.

Third, Plaintiff unfairly accuses Defendants of misinterpreting the plain language of the Settlement Agreement, setting forth a last-ditch argument that the language of the Settlement Agreement necessarily implies that loans covering non-simulator costs must be covered under the

---

[11] See personal loans made to the flight school discussed *supra*, Section A, as just one example of another source of income.

[12] The timing does not quite add up—specifically, the final loan was made in May 2014, but the final payment was not due until July 2014. *Id.* at 22–23 (citing Exs. D and F).

indemnification clause. Opp. at 20:11-24. Plaintiff suggests that "[i]f the intent of the parties was to only cover the Sierra Loans (i.e. the Third Category loans), then there would be no need to include the simulator facility itself in the Settlement Agreement, as the Sierra Air loans were only the 737 Simulator." *Id.* at 20:20-24. This contention is not only poorly articulated, but also irrelevant. That the Settlement Agreement contemplated the indemnification of loans used on the simulator facility does not mean that the **third** category of loans are these loans. Until very recently, Plaintiff appeared to agree that the loans which form the basis of this litigation were not used on the facility; previous filings discuss loans for the simulator only. *See* 4AC ¶ 65 ("To date, both BOTW and BAEDC have sought to enforce the referenced *flight simulator* loans against Plaintiff; therefore, the agreement to indemnify under the Settlement Agreement includes, without limitation, approximately $1.14 million liability to BOTW and $260,000 liability to BAEDC on the *flight simulator* loans") (emphasis added).

Finally, Plaintiff's intent when negotiating the Settlement Agreement is irrelevant. The plain language says the indemnity provision covers only loans for the simulator and its facility. *See Hot Rods*, 242 Cal.App.4th at 1175–1176 (holding that extrinsic evidence cannot be used to contradict the plain language of a contract); *see also Dore*, 38 Cal. 4th at 391. Plaintiff asserts that he "would never have agreed to the Settlement Agreement without the promise of indemnification for all the loans taken out by KSA and Sierra which Plaintiff guaranteed." *See* Opp. at 21:1-3, citing D. Yoon Decl. at ¶ 62. But this issue has already been litigated—Judge Hansen found that Plaintiff entered into this enforceable agreement, *as written*, of his own free will. *See* Ex. 13 to Motion, Hansen Decision at 11.

### 2. Plaintiff concedes he has not satisfied payment of the BAED loan and therefore has no right to contractual indemnity.

Plaintiff proffers several deficient arguments as to why he is owed indemnity on the **second** category of loans. Defendants did not ask the Court to disregard the law of the case without justification; rather, Defendants are providing recent developments that completely alter the factual predicate for Plaintiff's cause of action. Furthermore, Plaintiff's description of his relationship to Hana Japan throughout his Opposition changes when convenient for him—here, he fails to show that Hana

Japan's payment to BAED does not constitute satisfaction of his claims and foreclosure of his contractual indemnity rights. *See supra* at Section A(1).

### i. The present evidence is substantially different than it was when the Court issued its previous Order on Summary Judgment.

Plaintiff misapplies the "law of the case" doctrine here, nonsensically arguing that the Court must ignore a developing set of facts upon which its prior decision was predicated. Opp. at 21:14–20 (citing *Moore v. James H. Matthews & Co.*, 682 F.2d 830, 834 (9th Cir. 1982)). Plaintiff states that none of the *Moore* exceptions to the "law of the case" rule apply; to the contrary, the exception for new evidence that is substantially different *does* apply. Moore, 682 F.2d at 834. In their motion, Defendants proffered substantially different evidence regarding the BAED loan that could not have been presented in the last round of summary judgment, because the evidence did not exist until very recently—specifically, January 2024. *See* Motion at 23, Declaration of Christopher J. Rillo (Dkt. No. 273-15) ¶ 13; Ex. 18. Because the Court now has proof that an entity *other than Plaintiff* has satisfied Plaintiff's former obligation to pay $260,514.18 to BAED, it would be unjust to insist that Defendants still owe Plaintiff indemnification based on the former BAED obligation.

### ii. Hana Japan is a legally distinct entity, but Plaintiff's controlling relationship with Hana Japan proves that the latter will never pursue him for indemnity.

Plaintiff attempts to create a creditor relationship with Hana Japan where one does not exist, alleging he is still owed indemnity because he remains liable for the full $260,514.18, but now to Hana Japan. Opp. at 21–24. But since Plaintiff provides no evidence to show that Hana Japan is seeking enforcement against Plaintiff, Plaintiff is not entitled to indemnity. *See* Ex. 4 to MSJ, Settlement Agreement at 3 ("John and KS Aviation, Inc., agree to indemnify Dan should the loans for said items become delinquent *and the creditors seek enforcement against Dan*") (emphasis added).

Further, Plaintiff will be engaging in fraud should he direct Hana Japan to seek enforcement in the future. Plaintiff contends that because he guaranteed the debt to BAED, Hana Japan has the right to full repayment from him; and that Hana Japan should be considered a creditor for purposes of the indemnity clause. This argument relies upon the legal distinction between Plaintiff and his business, but—as Plaintiff admits mere paragraphs later—this is a distinction without a difference. *See id.* at

Case: 20-04021    Doc# 277    Filed: 05/17/24    Entered: 05/17/24 15:25:19    Page 15 of 21

22:28 to 23:1 ("Hana Japan is an entity fully controlled by Plaintiff and Jeannie [*sic*] Yoon"); *id.* at 23:2-3 (Hana Japan is "the primary source of [Plaintiff's] family's income"); *id.* at 23:4-5 ("[A] payment from an entity controlled by Dan and which his wife and children are shareholders is essentially a payment from Dan"). If Plaintiff controls Hana Japan, he can simply direct Hana Japan to not seek repayment. For Plaintiff to direct Hana Japan otherwise would be nothing more than a transparent attempt to manipulate the indemnity clause of the Settlement Agreement. Functionally, Plaintiff's relationship with Hana Japan is not one of creditor and debtor.

Plaintiff suggests the recent assignment agreement between Hana Japan and BAED results in a situation where Plaintiff now owes the BAED obligation to Hana Japan instead.[13] To the contrary, the assignment entirely forecloses Plaintiff's ability to seek indemnity. The critical fact here is that Plaintiff controls Hana Japan to an extent that it is impossible to conjure a hypothetical scenario (because a literal one does not exist) where Hana Japan would seek indemnity from Plaintiff, who relies on Hana Japan as a primary source of income for himself and his family. Opp. at 23:2–5.

Ultimately, Plaintiff is unable to set forth any evidence or proof that the **third** category of loans were used to pay for "the simulator and its contents," and because Plaintiff is barred from asserting a right to contractual indemnity for the **second** category of loans, he has failed to meet the requisite burden under the fifth cause of action. *Nissan*, 210 F.3d at 1102.[14]

### C. Plaintiff Has No Evidence That His Alleged Damages Are The Result Of An Alleged Breach By Defendants.

As Defendants have already explained, "Plaintiff has no evidence to show that his damages, *including his basis for declaring bankruptcy*, are causally connected to Defendants' alleged breach." *See* MSJ at 12:3-10 (emphasis added).[15] Rather, his financial woes are the result of his own

---

[13] Plaintiff's contention that Defendants misconstrued the agreement is rich, considering that he made no effort to send this agreement to Defendants to review. Defendants, meanwhile, attempted to obtain the agreement from counsel for BAED after learning of its existence, but did not ever receive it. *See* Declaration of Christopher J. Rillo (Dkt. No. 273-15 ¶ 13; Ex. 18.

[14] Plaintiff's claim that KS Aviation's actions caused the debt owed to BAED is merely tangential to the instant litigation. Additionally, Plaintiff fails to cite any case law that supports the absurd idea that the origin of the debt should be considered by the Court when ruling on this contract dispute.

[15] Plaintiff incorrectly claims, "[t]here is no dispute that John Yoon and KSA failed to indemnify Plaintiff as to all loans he guaranteed on behalf of KSA and Sierra Air, which lead to Plaintiff being sued by his lenders and filing for bankruptcy." Opp at 17. Defendants dispute this.

Case: 20-04021   Doc# 277   Filed: 05/17/24   Entered: 05/17/24 15:25:19   Page 16 of 21

wrongdoing and irresponsible risk-taking, which include "corrupting KS Aviation's finances and signing a Settlement Agreement premised on financial recovery of a 'destitute' organization." MSJ at 12:8-10. Put another way, because Plaintiff has zero evidence proving that he is entitled to repayment of the **first** category of loans or indemnification of the **third** category, he must instead show that the remaining balance on the BAED loan drove him to bankruptcy if he is to receive attorney's fees and related costs—and this he cannot do.[16]

Plaintiff dismisses Defendants' argument as nonsensical—but it is not. As this Court found in its MSJ Order, "Dan Yoon contends that the Bank of the West judgments (and defendants' failure to indemnify him) precipitated the Chapter 11 filing. Yet, because the indemnification clause may not cover the KSA Loans, a material fact exists regarding whether the bank's simulator loan balance was enough to push the Yoons into Chapter 11 bankruptcy." MSJ Order at 12:28 to 13:2. Plaintiff continues to assert that the BOTW judgment, rather than the BAED loan, drove him to bankruptcy, (Opp. at 24:13-14), without providing any real proof that the indemnity clause covers the BOTW loans, (*see supra* Section B(1)). It is thus a non-disputed material fact that Defendants' alleged breach—through nonpayment of the remaining balance on the BAED loan—could not have caused Plaintiff's damages, inclusive of his Chapter 11 filing and related claim for attorney's fees and costs.

### D.  Defendants Are Not Liable Under The Settlement Agreement.

Plaintiff concedes that John Yoon and Plaintiff are the only signatories on the Settlement Agreement. Opp. at 8:11-12. His entire argument regarding the "law of the case doctrine" misses the mark and Plaintiff set forth no evidence or legitimate authority regarding his conclusory allegations on successor liability and indirect liability.

#### 1.  KS Aviation is only bound by the provisions of the Settlement Agreement where it is explicitly referenced.

As a threshold matter, the law of the case doctrine does not apply here because Defendants are not seeking reconsideration on this issue. *See* Opp. at 8:23. The prior decisions cited by Plaintiff state

---

[16] Plaintiff falsely claims that Defendants did not address his request for attorney's fees in the moving papers. In fact, Defendants very clearly explained that that they are not liable for any of Plaintiff's purported damages, which include Plaintiff's claim for attorney's fees and related costs. Plaintiff is not entitled to these fees if Defendants did not cause his Chapter 11 filing, as Defendants argued in their opening papers.

only that KS Aviation is subject to the Settlement Agreement with *respect to the indemnity provision*s. The opinions say nothing of the remaining provisions, which bind the "Parties" defined as "John and Dan." *See generally,* Ex. 4 to MSJ, Settlement Agreement. By contrast, the indemnity provisions explicitly reference "John and KS Aviation." *Id.* Indeed, the Hansen Decision is limited to stating that "John and KS are liable to indemnify Dan against any sums he is forced to pay on the simulator loans and resulting judgments." *See* Ex. 13 to MSJ, Hansen Decision at 10. This Court's prior opinion is similarly limited to listing the *specific* provisions which bind KS Aviation; it never states that KS Aviation is bound by the entire agreement. *See* MSJ Order at 2–3.

Defendants do not dispute that John Yoon had authority to bind KS Aviation to the *specific provisions* of the Settlement Agreement where KS Aviation is mentioned. Plaintiff's cited caselaw is inapposite and does not provide authority demonstrating that KS is bound to any other provisions. Plaintiff's assertion that KS Aviation's intent to accept the contract is "clearly evidenced by the language directing KSA to take certain acts under the Settlement Agreement," (Opp. at 9:26-27), impliedly concedes that KS Aviation is only bound by the contract to the "certain acts" where it is named.

Finally, Plaintiff argues that any ambiguity must be interpreted against KS Aviation as the drafter citing to Cal. Civ. Code Proc. ("CCP") § 1654. Opp. at 9:28–10:4. Because KS Aviation is not a signatory to the contract, it cannot be a drafter. *See Hammes Co. Healthcare, LLC v. Tri-City Healthcare Dist.*, No. 09-CV-2324 JLS (NLS), 2010 WL 11442887, at *5 (S.D. Cal. Jan. 28, 2010) (refusing to bind a separate non-signatory corporate entity to an agreement signed by another corporate entity). Further, Plaintiff's declaration repeatedly explains that he negotiated for certain provisions of the Settlement Agreement. *See* Opp., D.Yoon Declaration (Dkt. No. 276-1) ¶¶ 52, 54, 59, 64, 68. *See also* Ex. 13 to MSJ, Hansen Decision at 6 (finding that Plaintiff's counsel had input into the final Settlement Agreement). Where the parties have activity negotiated provisions of the agreement, neither party is considered the drafter against whom ambiguous provisions are construed. *See e.g. In re Miller*, 253 B.R. 455, 459 n.2 (Bankr. N.D. Cal. 2000), *aff'd*, 284 B.R. 121 (N.D. Cal. 2002), *aff'd sub nom. Miller v. United States*, 363 F.3d 999 (9th Cir. 2004) (citing *Dunne & Gaston v. Keltner,* 50

Case: 20-04021    Doc# 277    Filed: 05/17/24    Entered: 05/17/24 15:25:19    Page 18 of 21

Cal.App.3d 560, 123 Cal.Rptr. 430, 432 n. 3 (1975); *Indenco, Inc. v. Evans,* 201 Cal.App.2d 369, 20 Cal.Rptr. 90, 94 (1962)).

### 2. The "non-settling defendants" are not liable under either successor liability or indirect liability.

Plaintiff's causes of action for fraudulent transfer (Count III), Cal. Bus. & Prof. Code § 17200, et seq. (Count IV), and alter ego (Count VI) are derivative of the primary causes of action against Defendants John Yoon and KS Aviation. Plaintiff puts forth no evidence for any theory of liability that would apply to the "non-settling defendants." In the absence of any such evidence, since Plaintiff first, second, and fifth causes of action fail, the claims against the "non-settling defendants" also fail.

### E. Plaintiff's Declaration Contains Inadmissible Evidence.

Plaintiff's statement that "[i]n 2014, KSA had its first significantly profitable year, with an estimated profit of $1,000,000," (D.Yoon Decl. ¶ 28), is inadmissible because it violates the best evidence rule and is inadmissible hearsay. Plaintiff explains KS Aviation's profits in 2014 as $1,000,000 in his own words when Plaintiff should have provided the original financial record showing $1,000,000 in profits. *See* Fed. R. Evid. 1002. No relevant exceptions apply. This statement is also inadmissible hearsay as Plaintiff offers his out of court statement regarding the profitability of KS Aviation for the truth of the matter asserted and no applicable exception or exclusion exists. *See* Fed. Rs. Evid. 801, 802, 803, 804. Plaintiff's statement that "KSA and John Yoon were well aware of these facts when the Settlement Agreement was negotiated," (D.Yoon Decl. ¶ 68), is inadmissible hearsay and lacks foundation. Plaintiff offers his out of court statement for the truth of the matter asserted and no applicable exception or exclusion exists. Pursuant to Federal Rule of Evidence 602, Plaintiff lacks a foundation to make a statement regarding Defendants knowledge.

## II. CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court enter an order granting Defendants' Motion for Partial Summary Judgment, and such other and further relief as the Court may deem just and proper.

Respectfully submitted,

DATED: May 17, 2024            BAKER BOTTS LLP

By: _____
Christopher J. Rillo (SBN 112009)
christopher.rillo@bakerbotts.com
Raerani Reddy (SBN 340475)
rani.reddy@bakerbotts.com
**Baker Botts LLP**
101 California Street, Suite 3200
San Francisco, California 94111
Telephone: (415) 291-6200
Facsimile: (415) 291-6300

*Counsel for Defendants KS Aviation, Inc., Xing Kong Aviation Service, LLC, John Yoon, Chen Zhao and Xin Han Aviation LLC*

Case: 20-04021    Doc# 277    Filed: 05/17/24    Entered: 05/17/24 15:25:19    Page 20 of 21

**CERTIFICATE OF SERVICE**

I hereby certify that, on May 17, 2024, a true and correct copy of this filing was served by CM/ECF on all counsel of record who have requested service in this Chapter 11 Case. In addition, (1) the filing is available for viewing and downloading via the CM/ECF system, and (2) the CM/ECF system will send notification of this filing to all attorneys of record who have registered for CM/ECF updates.

_____
Christopher J. Rillo