# Exhibit 5

This e-copy is the official court record (GC68150).



# MERCED COUNTY DISTRICT ATTORNEY
## BUREAU OF INVESTIGATIONS

*CASE REPORT – SUPPLEMENTAL 02*

**DISTRICT ATTORNEY**
Larry D. Morse II
**CHIEF INVESTIGATOR**
Patrick N. Lunney
550 W. Main Street
Merced, CA 95340
Tel: (209) 385-7381

## CASE INFORMATION

| | | | |
|---|---|---|---|
| CASE NAME: | Daniel Bong Yoon Sr | INV CASE NUMBER: | 481992 |
| CASE TYPE: | Embezzlement/Real Estate Fraud | RELATED CASE NUMBER: | |
| JUVENILE CASE: | | | |
| ARREST DATE/TIME: | | REPORTING OFFICER: | Anna Hazel DA43 |
| | | REPORT DATE: | 07/13/2015 |
| | | APPROVED: | Wayne Hutton<br>Sup. Invest Wayne Hutton - DA12 |

## VIOLATIONS

| VIOLATION: | TYPE: | DATE AND TIME OCCURRED: | DATE AND TIME REPORTED: | LOCATION: |
|---|---|---|---|---|
| PC504 | F | 10/16/2014<br>TO | 10/23/2014 | , |

## INVOLVED PARTY

| TYPE: | NAME: | RACE: | SEX: |
|---|---|---|---|
| Witness | Robert Deklinski | W | M |
| ADDITIONAL INFORMATION: | | | |
| Witness | Blair Erica | W | F |
| ADDITIONAL INFORMATION: | | | |
| Reporting Officer | Anna Hazel | | F |
| ADDITIONAL INFORMATION: | | | |
| Witness | Jeffrey Lee | K | M |
| ADDITIONAL INFORMATION: | | | |
| Reporting Party | John Yoon | K | M |
| ADDITIONAL INFORMATION: | | | |

## SUSPECT(S)

☐ Unknown

| NAME: | DATE OF BIRTH: | AGE: | RACE: | SEX: | HEIGHT: | WEIGHT: | HAIR: | EYES: |
|---|---|---|---|---|---|---|---|---|
| Daniel Bong Yoon Sr | 08/19/1949 | 65 | A | M | 5'06 | 160 | BK | BR |

ADDRESS:
11933 Dublin Canyon Rd, Pleasanton CA 94588

PHONE:

DRIVER'S LICENSE:
CA N94094453

ALIASES:

ARRESTED:



Case: 20-04021 Doc# 286-6 Filed: 06/24/24 Entered: 06/24/24 20:34:53 Page 2 of 9

This e-copy is the official court record (GC68150).

**MERCED COUNTY DISTRICT ATTORNEY**
**BUREAU OF INVESTIGATIONS**

*CASE REPORT – SUPPLEMENTAL 02*

CASE NAME: Daniel Bong Yoon Sr — INV CASE NUMBER: 481992

Daniel Bong Boon Sr

SSN: STATE ID:

CLOTHING, DESCRIPTION, TATTOOS, OTHER I.D.:

**NARRATIVE**

**BACKGROUND**

On 10/16/14, I met with John Yoon, CEO of KS Aviation and his attorney, Vincent Kim. Yoon explained that he had hired Kim in anticipation of a civil suit he was seeking against his partner in KS Aviation, Daniel Yoon (no relation). During the course of discussions between Kim and John Yoon regarding the business and its operation and Kim's review of documents pertaining to John's complaint against Daniel Yoon, Kim believed that the allegations may be criminal in nature and he advised John to contact the Merced County District Attorney's Office.

**ROBERT "BOB" DEKLINSKI – INTERVIEW 06/23/15**

On 06/18/15, Bob Deklinski, CEO of Sierra Air Center Development (SACD) contacted the Merced County District Attorney's Office (MCDA) and indicated he had information regarding Sierra Academy of Aeronautics that he wished to share with me. When I spoke with Deklinski by phone he stated that that the information he had involved "fraud" but that it was too much information to simply discuss over the phone. We agreed to meet at the MCDA office on 06/23/15 and I conducted a recorded interview with him at that time.

I did not provide any direct questions for Deklinski and instead elected just to let him speak about what ever information he wanted to provide. He chose to first explain his "background" as a retired FBI agent of 29 years and that he became associated with the SACD after looking for work as a flight instructor. After the "majority owner" who Deklinski identified as Daniel Yoon, learned of his law enforcement background, he asked Deklinski to oversee the company's EB-5 program to make sure it was run "properly." Deklinski described the EB-5 program as an "employment based" venture that allowed for foreign investors of $500,000 - $1,000,000 to invest in U.S. programs that created jobs (for every $500,000 taken in the program would have to show proof of 10 new jobs). In return, the foreign investor was provided 10 U.S. visas for them and their families. Deklinski stated that after introductions by Mark Hendrickson of the Merced County Community and Economic Development Department, he met with the Merced County Board of Supervisors and secured approval of the program from them. The U.S. Department of Homeland Security then approved the SACD as an "EB-5 Regional Center" in 2013. Deklinski offered that the "largest law firm in the world" currently monitors their EB-5 program; their program manager is "Hansel-Phillips" which has been involved in numerous large scale California construction projects and that they have a bonified business plan in place for the operation of the program.

Despite the extensive work Deklinski claimed has been done to formulate and develop this EB-5 program at the Air Center, he admitted that they have had no investors and have not collected any money.

After the extensive background was provided, Deklinski then began to discuss his reasons for wanting to meet with me and I found that he had no information pertaining to any fraud but rather that he was attempting to downplay any



Case: 20-04021 Doc# 286-6 Filed: 06/24/24 Entered: 06/24/24 20:34:53 Page 3 of 9

This e-copy is the official court record (GC68150).

allegation of fraud that there may be regarding the SACD. Deklinski stated that approximately two weeks ago, Steve Aguilar, IT Technician for Sierra Academy was asked to provide photographs to the main office for use in designing an EB-5 brochure. When employees accessed the thumb drive Aguilar provided containing the photos, they also found an undated letter, written to me from John Yoon. Deklinski provided me with a copy of the letter found ***(ref: Atch. 1)*** and referred to John Yoon as a "minority owner" of Sierra Academy. Deklinski stated that John and Daniel "don't get along" and blamed that on the fact that Daniel, as majority owner makes company decisions without consulting John who doesn't agree with the direction Daniel is taking the company. I reviewed the letter Deklinski provided and initially did not recognize it as correspondence I had previously received from John Yoon. However, after the interview, I conducted a search of all correspondence I had received from John since receiving his complaint and found that the contents of this letter matched an email that was sent to me on 04/21/15.

Deklinski stated that he has known John for some time and that he didn't believe that John had actually authored the letter because the contents described information and meetings that only Aguilar was privy to. This further concerned Deklinski because he described the content of the letter as "privileged information" protected by a non-disclosure agreement that all employees are required to sign. Deklinski claimed Aguilar and John were both confronted and denied knowledge of the letter but it was later found that Aguilar was maintaining a network server in his home that contained "all of the company's documents." According to Deklinski, Aguilar has since been placed on administrative leave. After reading over the letter briefly during the interview, it was apparent why Deklinski as CEO of the SACD was intent on meeting with me and why he may have requested that meeting to discuss issues of "fraud." It was clear in the letter that the author was raising serious concerns about Daniel Yoon, Brian Johnson (Vice President of Sierra Academy), Luke Zhang (Chain [sic] EB-5 consultant and Steve Aguilar's involvement in a meeting that took place on 04/06/15. It was said that in that meeting Daniel was very upset that potential investors from China had rejected the EB-5 business plan they had developed "because the data did not match." As a result, the men were directed by Daniel to make necessary changes to the data being used so that it matched the business plan that the company had paid so much money to develop. As a result, the author of the letter indicated that business plan currently being used by Daniel to promote the EB-5 program is associated with "incorrect and possibly fraudulent" data. I noted that Deklinski was mentioned nowhere in the letter and believed that his concern was less with any perceived personal involvement he may have had in this "fraud" and more with a potential lack of oversight as the CEO of the SACD or that he was simply meeting with me on behalf of Daniel to assess what the District Attorney's Office may be investigating.

Deklinski stated that his concerns were with any allegations there may be regarding the EB-5 program specifically as that was his responsibility and that any such allegations couldn't be substantiated because the program has received no money and where there is no money there can be no fraud. Deklinski stated that if there were any further questions I might have about the Air Center or the EB-5 program that he would be the point of contact and would provide any documentation I might need upon request.

**CORRESPONDENCE**

As I continued my review of documents provided by John Yoon and CPA Jeffery Lee pursuant to my requests for additional information and clarification of Sierra Academy's finances, I noted that I had received copies of "Asset" and "Balance Sheets" for Hana Japan, Inc. and Hana Yoon Corp. in the initial binder John had submitted ***(see 481992 INI***



Case: 20-04021 Doc# 286-6 Filed: 06/24/24 Entered: 06/24/24 20:34:53 Page 4 of 9

This e-copy is the official court record (GC68150).

***Atch. 1 pg. 139-146)*** as evidence of Daniel's embezzlement. The documents were dated in 02/14 and 03/14 and those dated in 02/14 contained several handwritten modifications, specifically, items crossed out or "zeroed out." For example, on the document titled "Hana Yoon Corporation Balance Sheet February 28, 2014" the date is crossed out and replaced with a handwritten "3/31/2014." Followed by that, there are handwritten changes to the line items for "Inventory," "Automobile," "Automobile – Lexus," "Total Current Liabilities," "Loan from Hana Japan, Inc.," "Loan from Sierra Academy," "Total Long-Term Liabilities" and "Net Income or Loss." These line items all contained figures that appeared to part of the totals (assets/liabilities/equity) reflected in the document. I found that on the second document, titled "Hana Yoon Corporation Balance Sheet Monday, March 31, 2014" the handwritten "modifications" that appeared on the line items from the 02/14 document were now reflected on the 03/14 document. For instance, the line item "Inventory" from 02/14 had a total of $5,100 which was crossed out and "15,000" written next to it. On the 03/14 document, the line item "Inventory" now read "$15,000." The two automobile line items, totaling over $110,000 were "zeroed out" on the 02/14 document and missing entirely from the 03/14 document. Also completely removed were the two "loans" from Hana Japan, Inc. and Sierra Academy that appeared on the 02/14 balance sheet. It appeared (by a black line was made through each amount) that the loan from Hana Japan, Inc. was in excess of $24,000 and the loan from Sierra Academy more than $200,000. The 03/14 document is signed by Jong-Ki Yoon, "President" (as were the Hana Japan documents). The "balance sheets" for Hana Japan, Inc. reflect the same handwritten modifications and corrections from the documents dated 02/14 to 03/14 with the 03/14 document reflecting an increase to the "Cash in Bank – BBCN," removal of a $60,000 "Loan to Sierra," $26,000 "Loan to Hana Yoon Corp" and $20,000 "Loan Payable HSBC," a decrease in the amount of equity in "Automobile" and owed on "Loan Payable – Automobile." These changes resulted in an overall reduction of more than $80,000 in total assets and over $21,000 in total liabilities. Similarly, the changes to the Hana Yoon Corp. documents resulted in a $100,000 reduction in total assets and approximately $267,000 in total liabilities.

John included these documents in his complaint alleging that it was an example of Daniel's "forgery" of documents, an allegation he made against Daniel concerning small business loans taken out against the Academy for the payment of the Boeing simulator project. While I had no independent evidence that these documents were necessarily "forged," I did find them relevant in further supporting that Sierra Academy money was "loaned" to Daniel's other businesses and that the restaurants had "loaned" money to the Academy. The documents also provided further evidence that Daniel's companies appeared to engage in modification of their financial status when it was convenient. When I showed these documents to Erica Blair, Office Manager for Sierra Academy, during the course of interviews that took place in 06/15, she stated that she had not seen them before and did not have any involvement with the preparing of financial documents for Daniel's restaurants. She did state, however, that she believed Daniel was leveraging his restaurants to obtain the personal loan he needed to purchase the Academy's simulator building and surrounding acreage. Blair stated that these balance sheets may have gone through these modifications, including the removal of any mention of "loans" made to or from Sierra Academy, in furtherance of Daniel's efforts to secure the new loan.

**SIERRA ACADEMY – BBCN ACCOUNT xx0101 (2009-2011)**

On 06/10/15, I received a series of binders from Blair containing the NARA (now BBCN Bank) Bank statements for Sierra Academy and Sierra Air Center Inc. for the period 2009-2011 (***ref: Atch. 2***). It must be clarified that the Sierra Air Center Inc. and the Sierra Air Center Development LLC are two distinct and separate entities under KS Aviation. The Sierra Air

This e-copy is the official court record (GC68150).



Center Inc., who's account is reflected in these statements, acts as the "maintenance branch" of Sierra Academy. The SACD is the regional center for EB-5 program that has been formed under KS Aviation. These statements appeared to be used to reconcile this account with Sierra's internal accounting as many of them contained handwritten notes and various "check marks" that would indicate the deposit/debit was being cross-referenced or verified in some way. When I reviewed the statements I found that while Sierra Academy never incurred a negative balance in those 36 months, they often spent more than they took in within a given month. However, at the end of each year, the business had profited and that the profit amount actually increased each year.

| | DEPOSITS: | DEBITS: | DIFFERENCE: |
|---|---|---|---|
| **2009 – SIERRA ACADEMY** | | | |
| | $6,193,747.03 | $6,180,379.25 | *$13,367.78* |
| **2010 – SIERRA ACADEMY** | | | |
| | $3,086,961.55 | $2,965,944.36 | *$121,017.19* |
| **2011 – SIERRA ACADEMY** | | | |
| | $5,673,451.01 | $5,243,489.49 | *$429,961.52* |
| **TOTAL:** | **$14,954,159.59** | **$14,389,813.10** | ***$564,346.49*** |

I noticed that the statements reflected that there were cash deposits to Sierra's account in various months throughout the 36 month period the statements covered. The cash was deposited to the account as follows:

**2009 – SIERRA ACADEMY**

| DATE | CASH DEPOSIT | NOTATION |
|---|---|---|
| 01/21 | $75,000 | "Dan" |
| 01/29 | $100.000 | "Dan" |
| 02/04 | $17,000 | "Dan" |
| 02/26 | $25,000 | "Dan" |
| 03/02 | $45,000 | "Dan" |
| 03/05 | $30,000 | "Dan" |
| 03/26 | $7,000 | "Dan" |
| 03/26 | $8,000 | "Dan" |
| 03/30 | $9,000 | "Dan" |
| 03/30 | $10,000 | "Dan |
| 03/30 | $15,000 | "Dan" |
| 05/12 | $9,800 | "Dan" |
| 07/09 | $4,875 | |



Case: 20-04021 Doc# 286-6 Filed: 06/24/24 Entered: 06/24/24 20:34:53 Page 6 of 9

This e-copy is the official court record (GC68150).

to Sierra Air Center referencing "transfer" and "Sierra Air Center payroll." These checks were signed by both John and Daniel Yoon.

**SIERRA ACADEMY – WESTAMERICA ACCOUNT xx3332 (2011)**

Also among the BBCN statements I received from Blair on 06/10/15 were KS Aviation Westamerica Bank statements for 01/11 – 12/11 (***ref: Atch. 4***). This account was previously identified by Blair as an account that Daniel uses exclusively. She stated that since she has been working at Sierra Academy, she has not seen statements for this account sent to the Academy office and believed that on Daniel possessed a debit/ATM card and online access to this account. Blair stated she has been instructed, at times, to deposit checks that are sent to the Academy in this account, however, the account is not used for regular Academy business (i.e. payroll, accounts payable etc.). When I informed Blair that the Westamerica statements were among the documents she provided, she was surprised and stated she was not aware that they were mixed in with the BBCN statements. She was unaware if there were other year statements possibly in the office but stated she would check. When I reviewed these statements I found that the account was named "KS Aviation Inc. dba: Sierra Academy of Aeronautics" and had regular, but much smaller deposits than the Academy, each month.

Total deposits to this account for 2011 exceeded $140,000 with just over $120,000 in debits. The monthly deposits were, on average, under $5,000 each with 2-6 deposits each month. There was only one deposit that far exceeded that average and that was $43,500 received in 05/11. When I examined the deposit detail for that transaction I found that it was a wire transfer from Sierra Academy's main checking account at BBCN. There was no stated purpose for that wire transfer but the bulk of the deposit, $43,058.04 was withdrawn the very next day by check written to "Cash" and signed by John Yoon. While Blair had stated that it was on Daniel that used this account in 2014-2015, it appeared that John was active on this account, along with Daniel, in 2011. Many of the checks written on this account to "Cash" and the in-branch cash withdrawals were signed by John Yoon (it should be noted here that the reverse side of these "cash" checks were not available in the statements to see any endorsement or re-deposit information there may have been). Much of the debit activity on this account mirrored the debit activity on the BBCN account and included retail purchases, fuel purchases and restaurants. However, in the months of 01/11-02/11, this account was used to pay several FAA flight exam fees. These were fees regularly seen as debited out of the Sierra Academy BBCN Bank account on a monthly basis and reflected the amounts paid by the Academy for student flight exams which the students reimbursed, in cash, to the Academy.

Blair had previously stated that Daniel often directed her to deposit refund checks or tax return checks sent to Sierra Academy to this account. She stated that she believed that was the only source of income to that account. In 2011, I was unable to ascertain the source of the deposits as the detailed deposit information that would include any copied check deposited was not included.

**WIRE TRANSFERS – BBCN ACCOUNT xx0101 2012-2014**

On 06/25/15, I received several file folders from Erica Blair containing BBCN Bank "Application and Instructions" for various wire transfers initiated from Sierra Academy's primary checking account [redacted] from 2012-2014 (***ref: Atch. 5***). Blair had stated in a previous interview that typically, Daniel would instruct her to begin paperwork on a specified wire he would request. She would fill out the "Application and Instructions" sheet for BBCN Bank, submit the paperwork to



Case: 20-04021 Doc# 286-6 Filed: 06/24/24 Entered: 06/24/24 20:34:53 Page 7 of 9

This e-copy is the official court record (GC68150).

Daniel for signature and when he returned it, fax the document to BBCN Bank herself. Blair stated that BBCN would then follow up with a phone call directly to Daniel to authorize the transfer. I found among the wire records only two documented wires out of Sierra Academy's BBCN account in 2012 and six in 2013. These wires totaled $119,350 and were authorized by both John Yoon and Daniel Yoon for "commissions" to Indochina Technology Services, Pham Thi Thuy and Phamhuu Tien. One wire for $7,000 on 02/19/13 was sent to Shenzhen Panoramic Culture Communications and was authorized by Daniel for "convention" fees.

The bulk of the documentation in these files pertained to wire transfers initiated and authorized in 2014. This was the same year that Daniel took over full duties at Sierra Academy due to John's accident and extended absence. I found almost 88 separate wires out of Sierra Academy's BBCN account with multiple wires occurring every month of that year. Wire transfers for 2014 totaled just under $1,400,000 and the application documents indicated that the transfers were initiated for "consultant fees," "advertisement," "marketing items," "commission," "retainers," "conventions," "maintenance fees," "aircraft rentals," "aircraft purchases," "travel reimbursements," "EB-5 business plan" and "expenses." Many wires were to businesses both in the U.S. and abroad as well as to various individuals that were identified as "consultants" for Sierra Academy. These appeared to be individuals that act as liaisons between Sierra Academy and the various foreign airlines they do business with in the training of student pilots. When reviewing the wire application documents I did note some inconsistencies when cross referencing the information with Sierra Academy BBCN bank statements for the same period. I found that there were approximately 10 wire transfers (totaling $432,500) from 01/14 – 08/14 that were reflected on the BBCN Bank statements that there was no corresponding wire application/authorization paperwork for. It is unknown if these wire transfers were initiated by Daniel personally without any corresponding paperwork or if the paperwork for those wire transfers were simply not made part of the files that Blair kept because they were not provided to her.

I also noted inconsistencies in the "purpose" noted for two wires specifically. On 02/05/14, a wire application was completed and signed by Daniel in the amount of $20,453 to the Sierra Academy offices in Korea. The purpose of the wire was noted as "commission." What was immediately unusual about this application was the amount of the "commission" being wired. There were numerous wires to the Sierra Academy Korea office during this time period, some specifically to the Academy recruiter in Korea, Jincheon Son. The wire applications were always accompanied by an invoice from Son which referenced the recruited student(s) name and a fee of $1,500 per student. The wires to Son appeared to consistently be in denominations of $1,500 and could reference just one or at times two students per invoice. When I examined the invoice attached to the 02/05/14 wire, I found typed where the student information was typically located, "Housing Repair Cost." I believe this wire transfer in excess of $20,000 from Sierra Academy funds was sent to Korea for use in repairing Daniel's home there.

On 09/30/14, a wire application was prepared by Blair and signed by Daniel. This wire was for $20,500 and the "beneficiary" was listed as Bong-Soon Yoon with an account in South Korea. Bong-Soon was previously identified to me by John Yoon and Erica Blair as Daniel's sister. The application "purpose" was noted as "Kitchen Equipment." Attached to the wire application was a second application that appeared to have been previously completed in 05/14 by Jeenee Yoon, Daniel's wife also to Bong-Soon. That application documented a wire request for $6,000 from Hana Japan's BBCN account [redacted] to Bong-Soon for a "remodel." The "purpose" and amount was crossed out and replaced with the

This e-copy is the official court record (GC68150).



information ultimately included in the wire transfer Blair initiated in 09/14 application. I recalled that Blair had mentioned in her interview that Daniel had instructed her to wire $20,000 to his sister in Korea and to "contact his wife" for the wire details. I believe this is the wire that Blair was referring to and which she believed was being used to finance renovations to Daniel's home in Korea (*see 481992 01*).

Search warrants for detailed information pertaining to these unknown and questionable wire transfers will be requested for Sierra Academy's primary BBCN Bank account. Additionally, search warrants for all known accounts held by Hana Japan, Inc. and Hana Yoon Corp., Daniel's restaurant businesses and Daniel's personal bank accounts will be requested to confirm whether or not money was transferred or "loaned" from these businesses/personal accounts to Sierra Academy by Daniel Yoon as well as to determine if money from Sierra Academy or any of its subsidiaries was received into these accounts.

This investigation remains ongoing.

End of Report.