# Exhibit 9

1          UNITED STATES BANKRUPTCY COURT
          NORTHERN DISTRICT OF CALIFORNIA
2
IN RE:                      :     Case No. 19-42763-CN
3
DANIEL B. YOON and JEENEE S.  :    Chapter 11
4 YOON,
                            :
5     Debtors,                    Oakland, California
                                  Friday, May 24, 2024
6                           :     12:02 p.m.

7 : : : : : : : : : : : : : : : : : : : : : : : : : : : :

8 DAN YOON,                   :     AP 20-04021

9     Plaintiff,             :

10          v.               :

11 K. S. AVIATION, INC., *et al.,* :

12     Defendants.            :

13 : : : : : : : : : : : : : : : : : : : : : : : : : : : :

14              TRANSCRIPT OF PROCEEDINGS
          BEFORE THE HONORABLE CHARLES NOVACK,
15             UNITED STATES BANKRUPTCY JUDGE

16
APPEARANCES:
17
For Plaintiff/Debtor:        Practus, LLP
18                           BY:  BERNARD KORNBERG, ESQ.
                             58 West Portal Avenue, PMB 782
19                           San Francisco, CA  94127

20
Audio Operator:              RUBY BAUTISTA, ECRO
21
Transcript prepared by:      JANICE RUSSELL TRANSCRIPTS
22                           1418 Red Fox Circle
                             Severance, CO  80550
23                           (757) 422-9089
                             trussell31@tdsmail.com
24
Proceedings recorded by electronic sound recording; transcript
25 produced by transcription service.

```
1   APPEARANCES (via Zoom):

2   For the Defendants:          Baker Botts LLP
                                 BY:   CHRISTOPHER RILLO, ESQ.
3                                101 California Street, Suite 3200
                                 San Francisco, CA  94111
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1    the -- well, no.  We, we included in our declaration, also.

2            THE COURT:  Okay.  So as to those loans, Dan's loans,

3    made, again, the question is, look, KSA is saying, "Your Honor,

4    grant summary judgment because here are the terms of the

5    settlement agreement and my li, and KSA's liability and who,

6    John Yoon's liability," or whoever's liability, "it doesn't, I

7    mean, we're not liable to pay these debts now because there's

8    been, no CPA has looked at this and KSA is, isn't solvent,"

9    again using that short-term language to describe exactly what

10   the settlement agreement says.  Okay.

11           The contract -- so I've got a contract.  Nothing in

12   the settlement agreement.  A con -- to be interpreted under

13   California law.  A contract must be interpreted as to give

14   effect to the mutual intention of the parties as it existed at

15   the time of contracting so as, so far as the same is

16   ascertainable and lawful.  Language of a contract is to govern

17   its interpretation, if the language is clear and explicit, and

18   does not involve an absurdity.  Where contract language is

19   clear and explicit and does not lead to absurd results, we

20   ascertain intent from the written terms and go no farther.  Now

21   -- and that's -- and again, I don't think this contract is, is

22   integrated, but -- and, and John Yoon has, or Dan Yoon in his

23   declaration has told me what he thinks the contract means.

24           There is a material issue of fact as to -- again, to

25   the extent that KS, the defendants are arguing that, "Look,

1    because no C, no CPA has looked at this, we're not liable," or,

2    or, again not liability, but it says such funds will be paid

3    once, you know, or, or -- again, "We're not liable because we

4    don't know what funds are owed Dan because we don't know what,

5    what loans, we don't know what funds are clearly and legally

6    documented as, as official loans by Dan to the corporation.

7    Because no accredited CPA has looked at that." And KSA is

8    saying, "Well, that was Dan's job to do," and John's saying,

9    "No, that was KSA's obligation because they've got the, they've

10   got the records."

11          Look, there's a material issue of fact as to who was

12   required to hire the CPA. The language is uncertain. Language

13   doesn't, of the settlement agreement doesn't state who was

14   obligated to hire the accountant. So it's just a question of

15   fact. It, I don't know if the parties have waived this issue

16   because, given the years. I don't know, but there's certainly

17   a question of fact as to who was supposed to hire the CPA and I

18   assume the parties will address this at trial.

19          But there's clearly a question of fact as to who,

20   again, to the extent that this is an impediment towards Dan

21   Yoon collecting on this, these loans, his loans, it's a

22   question of fact.

23          Let's turn to something, the next issue raised with

24   regard to the first claim for relief, which is, look, KS --

25   again, the language -- again, the settlement agreement then

1   says, "Such funds, i.e., Dan's Official Loans, will be repaid

2   once the Company has regained its financial footing," etc.

3   There's, as far as I'm concerned, also a material question of

4   fact regarding the financial status of KSA.  I had -- I do not

5   understand what the business relationship is between KSA and

6   Xing Kong.  It is poorly defined in the declarations that

7   address it.  I don't know if KSA is still a separate entity and

8   what the real financial status of Xing Kong is.  I don't really

9   know if Xing Kong has any of the business interest.  I don't

10   know what, what the impact, the potential as far as its

11   finances may, may have on KSA's finances.  I don't know.

12           The only, the only evidence I have as to what the

13   relationship is between, or, or the corporate relationship is

14   between KSA and Xing Kong is, I guess, in the letter from Xing

15   Kong to KSA's employees where it says, in passing, that KSA

16   bought the shares of KSA.  Well, that means that KSA is still a

17   separate corporation, but I don't know what impact -- I -- I --

18   I -- and again, and, and the financial records that I've been

19   provided, or that were provided in the declarations are spotty,

20   to say the least.  Again, they include, you know, one of them,

21   I think, includes an expense of depreciation.  Well, I don't

22   know whether -- again, that's not a cash flow, cash flow issue

23   or, that's really a tax issue.  I don't know how they wanted

24   to, I don't know how the parties meant to determine whether

25   KSA's regained its, quote unquote, financial footing.  I don't

1  know what that means.

2          So there's a question of fact as to what KSA's

3  financial status is.

4          That being said, Mr. Kornberg, what evidence are you

5  going, I mean, isn't this a -- so there's a question of fact,

6  but Mr. Kornberg, how are you going to address that at trial?

7          MR. KORNBERG:  I, I think we put in our summary

8  judgment motion, which is more on the theory, I mean, I can't

9  tell you what KSA and Xing Kong's relationship is.  They're,

10  they're the same company.

11          THE COURT:  But, but is, isn't this all your burden of

12  proof come trial?

13          MR. KORNBERG:  I mean, we believe they --

14          THE COURT:  Well, see, believing at this stage of the

15  game is --

16          MR. KORNBERG:  Well, not believe.  Sorry.  Our

17  argument and what we put in the brief and what we'll try to

18  prove at trial is that Xing Kong basically raided KSA's assets

19  and KSA volun, went along with it, right?  KSA was like, "We'll

20  give you all our income.  We'll give you all our money."  The

21  debt load wasn't that high for KSA.  And they just -- they --

22  all the income from KSA, they gave to them, all the employees,

23  everything.  So they, they took --

24          THE COURT:  Okay.  But again, again, this is not part

25  of the summary judgment motion.  But I'm -- okay.  I'm, I'll be

1          THE COURT:  Which doc -- okay.  I'm -- you're now

2     about to give me evidence I don't have before me.  I'm not

3     interested.  Thank you.

4          MR. KORNBERG:  All right.  But the --

5          THE COURT:  We're done.

6          MR. KORNBERG:  -- the point is is that --

7          THE COURT:  But -- all of which would have been

8     nice -- okay.

9          MR. KORNBERG:  Yeah.

10          THE COURT:  I, I understand.  You're going to -- you,

11     you've got evidence.  You think you can carry that burden.  I,

12     I look forward to hearing the evidence.  Okay.

13          So as to the first motion, as to the first claim for

14     relief, which is breach, that, "Look, we have no liability.  We

15     are" -- summary -- I mean, "There's no material question of

16     fact as, as to KSA's liability on Dan's notes."  I believe

17     there's a question of fact.  Because I don't know who was

18     supposed to hire the CPA.  I don't know what KSA's financial

19     status, real financial status is.  I, I just can't tell based

20     on this record.  But okay.

21          Now I'm, I'm not going to decide -- I'm also going to

22     put off for trial 'cause I don't think it's going to take a

23     whole lot of time in the examination as to which loans are

24     subject to a settlement agreement.  I don't think I need to --

25     we'll just wait for Mr. Rillo's, for Dan Yoon's testimony and

1  Mr. Rillo's cross-examination, none of which, I don't think,

2  are going to be -- well, we'll see how long that is.

3        But again, so summary judge, motion for summary

4  judgment as to the first claim for relief is denied for reasons

5  -- again, that's my initial thoughts.

6        Second cause of action, which is KSA breached the

7  covenant, you know, the, the covenant of good faith and fair

8  dealing by failing to hire an accountant and having a sham

9  arrangement with Xing Kong, Inc. where Xing Kong receives all

10 of KSA's revenues.

11        Same questions of fact exhibit here, exist here as to

12 the covenant of good faith and fair dealing. I don't know who

13 was supposed to hire the accountant and I don't know, I don't

14 know enough about this arrangement with Xing Kong to say what

15 its terms are. I just, I just can't tell. Because no --

16 because -- and I, and I read, you know, the, the declaration

17 of, was, Chen, Chen Zhao, is it? I don't know what -- again,

18 there's no signed agreement, I guess, between KSA and Xing Kong

19 and I don't know what money he was pour, he was putting in.

20 Were they loans, not loans? I have no idea, no idea what was

21 going on here.

22        So there are just questions of fact as to what

23 actually happened here, what the actual arrangement is with,

24 between KSA and Xing Kong. I, I can't tell based on the facts,

25 the declarations and the other evidence that, that's been

1  submitted to me.

2       Fifth cause of action, which is the breach of

3  contractual indemnity.  I've already -- so get also covered by

4  the settlement agreement and -- and -- and it -- let me just

5  briefly read the pertinent part of the settlement agreement and

6  it's, I, I think, Paragraph 3.

7       MR. RILLO:  Yes, sir.

8       THE COURT:  Right, and it, again, it -- and I've dealt

9  with this language before in, in the prior plaintiff's summary

10 judgment motion.  But the pertinent part says that, "KSA

11 Aviation, Inc. will assume the liability of loans made to a

12 simulator and make payment" -- let me go back.

13          "Dan further agrees and recognizes that the simulator

14          facility and its contents are not part of the EB5

15          Regional Investment Program; thus said facility and

16          its contents belong to KSA Aviation, Inc. and are an

17          integral part of its marketing strategy and future

18          pilot-training programs and critical to future

19          relationships with domestic and international

20          customers.  KSA Aviation will assume the liability of

21          loans made to the simulator and make payments to those

22          loans.

23          In recognition of Dan's agreement that KSA Aviation,

24          Inc. owns the simulator facility and its contents,

25          John and KSA Aviation, Inc. agree to indemnify Dan

1    should the loans for said items become delinquent and

2    the creditors seek enforcement," "and the creditors

3    seek enforcement against Dan."

4    That's the pertinent language.  And again, I've

5    already found under, I think, and, and, and ruled under 7016

6    that KSA and John Yoon are obligated to indemnify the debtors

7    for the 260, $263,000 left on the East Bay Development Corp.

8    loan, again which is documented, again which loan form the

9    basis of East Bay's proof of claim in the chapter 11 case.

10    The argument -- and so, again, I've already ruled on

11    that and K, I guess the defendants say, "Well, wait a minute.

12    There -- there -- there have been some factual changes that you

13    need to consider, your Honor, if, if, if you think this is law

14    of the case."  And the argument that the resolution of Han

15    Japan guaran -- I guess those facts are that there is

16    ongoing -- that -- that there is litigation by -- East Bay

17    Development Corp., again, sued on, sued to collect the note it

18    was due.  There were guarantors.  It sued, I guess, Han Japan

19    among those parties, among, among the guarantors and Han Japan

20    settled the litigation by, I think, paying East Bay Development

21    Corp. $50,000, is that correct?  Some sum of money and in

22    exchange Han Japan was assigned East Bay Development Corp.

23    loans, East Bay Development Corp.'s loan.

24    And the argument that the defendants make is that Han

25    Japan is controlled Dan Yoon.  He's not going to have Han

1   Japan, quote unquote, enforce.  Because again, the indemnity

2   clause, according to defendants, is that K. S. -- John -- K. S.

3   -- K. S. -- K. S. Aviation agreed to indemnify Dan.  So the

4   loans for said items become delinquent and the creditors seek

5   enforcement and the defendants' argument said, "Look, there's,

6   there's not going to be an enforcement here.  Because Dan, Dan

7   Yoon and his wife con," and I guess his family, "control Han

8   Japan and Han Japan is not going to enforce this, this," you

9   know, "it, its, its assigned rights."  And that's not accurate.

10  Those rights are already being enforced because East Bay filed

11  a proof of claim for the $262,000 and the claim is going to be

12  paid as part of the general unsecured creditor class.  That's

13  what the plan says.  The claim's still on file.

14       So at least on the record before me, again the record

15  before me, I can't grant summary judgment because the defend,

16  because I don't think the defendants have met their burden of

17  production with regard to the East Bay Development Corp. loan.

18  I don't think -- my ruling stands and no, nothing has changed.

19  The claim's still on file.  That's how it's going to be

20  enforced against the Yoons through the plan and that claim's

21  still there and whatever money -- and again, I assume the, the

22  debtors are -- no one's telling me different -- are, are

23  performing under the plan.

24       So I've got a, an enforcement of that claim through

25  the filing of the proof, enforcement of that debt through the

1  filing of the proof of claim.

2      Next question.  Well, again, that, that's not the

3  extent -- okay.  And so that takes care -- that -- that

4  addresses the summary judgment as to the East Bay Development

5  Corp. loan.

6      Next question is whether I should grant summary

7  judgment, partial summary judgment with regard to whether the

8  Bank of the West debt is subject to the indemnification clause.

9  And the argument here -- and, and again, I, I didn't grant

10  summary judgment.  I find that there's a question of fact with

11  regard to the plaintiff's summary judgment motion on this end.

12      And what I have here is a declaration from Dan Yoon

13  saying, "Look, the Bank of the West debt was incurred by" --

14  again, this is the 2014 loans and he was in, I think he was in

15  charge of -- 'cause I think John had, John Yoon, again, was

16  still recovering from his motorcycle accident.  And, and so Dan

17  Yoon was in charge of the corporation and Dan Yoon has provided

18  a declaration saying, "Look, we borrowed the Bank of the West

19  debt because in order to, because in order to have the

20  simulator we needed to significantly improve the," I'll call it

21  the hangar, or the "facility that actually was going to house

22  the simulator.  And that's what we used," you know, "some, all

23  of that money for."

24      So there's a material question of fact regarding how

25  the Bank of the West loan was used, again because -- and, and

1   because of that, again -- and again, because of the question of

2   fact as to how the Bank of the West loans were used, it, it,

3   it, it creates a question of, question of fact as to whether

4   the Bank of the West funds fall within the indemnification

5   agreement in the settlement, you know, or, or clause in the

6   settlement agreement.  Okay.

7          So those are my tentative thoughts regarding the

8   claims for relief.

9          Now the -- there have been arguments with regard to

10  some of the other, you know, some specific factual allegations

11  like, oh, debtor, you know, why the debt -- why these -- why

12  the Yoons filed the chapter 11, that, that, you know, again,

13  that the breaches, that KSA's failure to pay the Bank of the

14  West and East Bay loans, you know,  weren't the cause of his

15  bankruptcy.  I don't know what that has to do with anything

16  with regard to a summary judgment motion.  It may, may address

17  Dan Yoon's attempt to collect Mr. Szabo's fees or cover

18  Mr. Szabo's fees, but I'm just not -- I'm, I'm just not, I'm

19  not going to address them today because they're, those aren't

20  claims, you know.  Those are some of the damages that may be,

21  or not, be awarded, but they really have nothing to do with

22  the, the claims, *per se*.  And again, again -- and the, the

23  argument being that Dan's damages are not the result of the

24  breach by defendants, you know.

25          Again, the plan, I think, just for example, Dan Yoon

1  says, "Look, we filed this bankruptcy because they were about

2  to foreclose on my, on my property and, because they --

3  they -- prepetition, Bank of the West got substantial multi-

4  million dollar judgments collectively against my wife and me."

5  That's -- and their plan addressed those claims, I mean,

6  addressed those proofs of claim.

7         So to argue that, well, KSA's alleged breaches of the

8  settlement agreement didn't cause the bank -- weren't part and

9  parcel -- didn't lead to the bankruptcy filing.  Again, to the

10 extent that that's relevant, you know, there's certainly a

11 question of fact as to that.  Okay.

12        Those are my tentative thoughts.  So my tentative

13 thoughts are to deny the motions, motion for summary judgment

14 and remind the parties that, you know, the settlement agreement

15 imposes some terms with regard to KSA's payment that -- and

16 again, as I said, I'm, I'm looking forward to, to the evidence

17 addressing those terms.

18        Mr. Rillo?

19        MR. RILLO:  Your Honor, the one point I would make,

20 and I make it respectfully, is that the, we made an objection

21 to Dan's categorical statement that the company was profitable;

22 therefore, there was no --

23        THE COURT:  Right.

24        MR. RILLO:  -- purpose to borrow the money.  He is

25 stating that the company was profitable, $1 million even.  I've

1  frank.  I don't think there's much records left, at least not

2  in our possession and not that they've been produced.

3          THE COURT:  Okay.

4          MR. KORNBERG:  So it may be Dan Yoon's testimony as

5  the CEO of the company who was operating it at the time and

6  that may be it.

7          THE COURT:  Right.  So again, I don't know if the

8  best, I mean, I don't know if the best evidence rule's going to

9  apply or not apply.  I don't know if the documents still exist,

10 don't exist.  I don't know if that's an exception.  We'll deal

11 with that at trial, Mr. Rillo.

12         MR. KORNBERG:  Your Honor, can I also --

13         THE COURT:  Yes.

14         MR. KORNBERG:  You're granting the -- you're -- you're

15 ruling in my favor.  So I won't belabor it, or probably heading

16 that way.

17         THE COURT:  That's correct.

18         MR. KORNBERG:  But I will point out I don't even think

19 the profit issue is necessary to deny summary judgment here.  I

20 mean, what we've addressed is and provided evidence of, there

21 is a contract.  It called for certain payments to Boeing and it

22 was modified and that these loans were taken out exactly at the

23 same time.  And we have Dan Yoon saying, "That's what these

24 were used to pay for."  If the company wasn't profitable, then

25 where did the money go to pay for all this stuff?

```
1          THE COURT:  Well, again  --
2          MR. KORNBERG:  I don't think that --
3          THE COURT:  -- I think Mr. Rillo contests the timing
4   of these loans, correct, a little bit?
5          MR. RILLO:  You're correct, your Honor.  And also --
6          THE COURT:  Right.
7          MR. RILLO:  -- that they're not secured by the
8   simulator and it'd be highly unusual for a lender to lend money
9   for such expensive collateral.
10          THE COURT:  Yeah.  You -- you -- you read my mind, is
11  one of the thoughts going through my head.  I mean, interesting
12  that they didn't --
13          MR. KORNBERG:  Well --
14          THE COURT:  Well, but again, we'll, we'll just see.  I
15  mean, look, the Bank of the West loans, I've looked at the Bank
16  of the West loans and one of the reasons why I denied summary
17  judgment to Mr., to Dan Yoon is because, unlike the East Bay
18  loan, the Bank of the West loan, note, and whatever else
19  accompanied with it, didn't, didn't clearly state what the
20  purpose of the loan was.  I agree.  And, and someone's going to
21  have to tell me.
22          MR. KORNBERG:  I mean, they --
23          THE COURT:  And, and, and your client has.
24          MR. KORNBERG:  I mean, just to correct that, your
25  Honor.  The Bank of the West loans were secured by all
```

1  collateral of KSA.

2          THE COURT:  That's right.  Well, if --

3          MR. KORNBERG:  So it did secure those things.

4          THE COURT:  That's true and -- right.  And, and, and

5  again, they, they got the lien against the Pleasanton property

6  as part of the lit, as part of the lawsuit against the Yoons.

7          MR. KORNBERG:  But even at the time of origination,

8  Bank of the West had, had --

9          THE COURT:  Right.

10          MR. KORNBERG:  -- a security interest in KSA --

11          THE COURT:  Right.

12          MR. KORNBERG: -- right?

13          THE COURT:  Right.

14          MR. KORNBERG:  So it did secure all, everything,

15  right, by the collateral, plus --

16          THE COURT:  Yeah.

17          MR. KORNBERG:  -- it had guaranties from --

18          THE COURT:  You're right.  Right, right.

19          MR. KORNBERG:  -- everyone.

20          THE COURT:  Okay.

21          Well, okay.  We've got three -- so again, the motion

22  for summary judgment for the reasons set forth in the record is

23  denied.

24          We've got three days of trial in July, correct?

25          MR. RILLO:  Your Honor.

CERTIFICATE

    I, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

/s/ *Janice Russell*                    May 30, 2024

Janice Russell, Transcriber                Date